SCHALK CHEMICAL COMPANY, A CALIFORNIA CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GERALD I. FARMAN AND HAZEL I. FARMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN CARVER BAKER AND PATRICIA BAKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 63853, 63855, 63862. Filed July 9, 1959.

*Donald K. Hall, Esq.*, for the petitioners.

*Marion Malone, Esq.*, and *J. Earl Gardner, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* Schalk accrued on its books and deducted in its return for 1950 the liability, which it assumed in the assignment agreement of December 29, 1950, to pay $45,000 to Hazel I. Farman, Patricia Baker, Evelyn Marlow, and Horace O. Smith, Jr., and interest at 5 per cent per annum on $25,000 from January 15, 1948. The respondent disallowed the claimed deduction. Petitioners now concede that $20,000 of the $45,000 is not deductible by Schalk, but contend that the remaining $25,000 plus the interest is deductible by it as an ordinary and necessary business expense.

In support of their contention, petitioners argue that the settlement agreement was not a purchase and sale agreement although cast in the form of one; that therein, for $25,000, Smith agreed to resign as supervisor of the trust and as an officer and director of Schalk (and to obtain the resignation of the officers and directors whom he had caused to be elected or maintained in office); and, for $20,000, Smith granted to Hazel I. Farman, Patricia Baker, and Evelyn Marlow (hereinafter referred to as the other beneficiaries) an option to purchase for $20,000 the stock interest in Schalk distributed to him upon termination of the trust. Assuming this construction of the agreement to be correct, they argue that the $25,000 payment made by the other beneficiaries to Smith at the time of the execution of the agreement was justified and necessary for the preservation of the business of Schalk; that if Schalk had paid, or by resolution of its board of directors had authorized the payment of, the $25,000, this amount would have been deductible by Schalk; that, disregarding form, the substance of the transaction was that it was authorized by the "majority owners" (the other beneficiaries) on behalf of and for the

benefit of Schalk, and, therefore, by Schalk; that Schalk was, therefore, morally obligated to reimburse the other beneficiaries for the $25,000 payment and for interest on the money they borrowed in order to make that payment; and that when it assumed the obligation to reimburse them it became entitled to deduct $25,000 and interest in the amount of $3,697.92.

After Smith became supervisor of the trust in 1943 the other beneficiaries, led by Gerald I. Farman, Smith's stepfather, became dissatisfied with the management and policies of Schalk. Suggestions made by them which they thought were in the best interests of Schalk were not followed by Smith and the officers and directors whom he had caused to be appointed. In April 1947, Evelyn Smith Marlow and Patricia Baker filed a suit to have Smith removed as supervisor. Demurrers to the complaint were sustained, and during the period that the plaintiffs might have filed an amended complaint, representatives of Smith and the other beneficiaries entered into negotiations to settle the controversy. During these negotiations Smith offered to sell his interest in the trust and resign as supervisor of the trust and officer and director of Schalk. The other beneficiaries suggested that Schalk purchase Smith's interest in the trust. Smith refused, and insisted that any settlement agreement had to be between Smith, as an individual, and the other beneficiaries, as individuals.

The parties to the settlement agreement were in fact the other beneficiaries and Smith. Schalk was not a party to, and did not authorize the other beneficiaries to enter into, the agreement. Petitioners' argument that the agreement was nevertheless informally authorized by Schalk and that it was, therefore, obligated in equity and good conscience to reimburse the other beneficiaries for the $25,000 payment made by them, is without merit. Their reasoning is that the other beneficiaries beneficially owned 83⅓ per cent of Schalk; that as "majority owners" they were acting on behalf of and solely for the benefit of Schalk and for the preservation of its business when they entered into the agreement; and that their action was in substance the action of Schalk. This reasoning overlooks the fact that the trust agreement, which created their beneficial interests, placed complete control of Schalk in Smith, the supervisor of the trust, and prevented them from acting for or on its behalf. Not having any power to act for Schalk, we fail to see how any action taken by them can be deemed to be the action of Schalk. Moreover, we think petitioners place undue stress on the benefits to Schalk from the settlement agreement and not enough on the benefits they were seeking for themselves. The other beneficiaries sought the resignation of Smith as supervisor of the trust because they were dissatisfied with the management and policies of the corporation under his regime and wanted to acquire the right, which they did not have,

to participate in its management and control. We are satisfied that they thought their participation would be beneficial to the corporation, but we are not convinced that the management of the corporation under Smith was incompetent and that their action was either necessary or desirable to preserve its business. If the anticipated benefit to the corporation materialized they would benefit personally therefrom as income beneficiaries of the trust whose principal asset was the stock of Schalk. In the circumstances we think it reasonable to assume that they were not overlooking that benefit and that their action in entering into the settlement agreement was motivated to some extent, if not entirely, by the benefits they thought would accrue to them personally. In any event, Schalk did not authorize them to act, formally or informally, and it was not obligated, morally or legally, to reimburse them for the $25,000 they paid pursuant to the terms of the settlement agreement. Its failure to do so distinguishes the facts here involved from those in cases, such as *Catholic News Publishing Co.*, 10 T.C. 73, cited by petitioners.

There being no obligation on the part of Schalk to reimburse the other beneficiaries for the $25,000 payment made by them in 1948, its action approximately 3 years later in agreeing to reimburse them for that payment together with the interest they had paid on money they borrowed to make it, and for assuming their remaining obligations under the settlement agreement, did not, in our judgment, result in an ordinary or necessary business expense.

Moreover, we do not agree with petitioners that the consideration the other beneficiaries received for the $25,000 payment was the resignation of Smith as supervisor of the trust and as an officer and director of Schalk. Smith agreed to resign if the other beneficiaries would purchase his one-sixth minority interest in the stock of Schalk at the termination of the trust. Under the terms of the settlement agreement he received no cash consideration for his resignation. Therein the other beneficiaries agreed to pay him $45,000 for his stock interest, $25,000 of which was to be paid at the time of the execution of the agreement and the remaining $20,000 on or before 30 days after the termination of the trust. The provision relating to the $25,000 payment reads, in part, as follows:

> For and in consideration of the sum of $25,000.00 to First Party [Smith] in hand paid by Second Parties [the other beneficiaries] * * * First Party agrees to sell * * * and Second Parties * * * agree to buy * * * upon the termination and distribution of that certain trust dated December 29, 1930 * * * *all of the then right, title and interest of the First Party in and to the corpus and any accumulations thereof then belonging or distributed to First Party.* [Emphasis supplied.]

It is apparent from this provision of the agreement that $25,000 was the downpayment the other beneficiaries obligated themselves to make

(and made) at the time of the execution of the agreement in consideration for Smith's agreement to sell them his minority stock interest at the termination of the trust. If Schalk had made this payment in the first instance, it clearly would not have been entitled to deduct it as an ordinary and necessary business expense because it was part of the purchase price of an asset, particularly in the absence of a satisfactory showing that the purchase price was excessive. Its character was not changed by reason of the fact that Schalk assumed the obligation to reimburse, and did reimburse, the other beneficiaries for the payment made by them. Respondent did not err in determining that Schalk was not entitled to any ordinary and necessary expense deduction in 1950 when it voluntarily agreed to reimburse the other beneficiaries for the $25,000 payment, and for the interest they had paid on the money they had borrowed to make this payment.

Petitioners make the alternative contention that if the liability assumed by Schalk to reimburse the other beneficiaries for interest in the amount of $3,697.92 is not deductible as a business expense, then it is deductible as "interest." This amount is clearly not deductible as "interest" as there was no indebtedness on the part of Schalk on which interest could accrue.

Petitioners' next contention is that the respondent erred in determining that the payment of $25,000 made by Schalk to the other beneficiaries in 1951 constituted a dividend to Hazel I. Farman and Patricia Baker in that year to the extent that they participated in the receipt of the payment.

The trust in which the other beneficiaries owned beneficial interests in the stock of Schalk terminated on December 29, 1950. On that date, for all practical purposes, Hazel I. Farman became the owner of 50,000 shares, Patricia Baker 16,667 shares, and Evelyn Smith Marlow 16,667 shares, although the order directing distribution was not entered until March 20, 1951. In February 1951 Schalk made a distribution to them of $25,000. Hazel I. Farman received $15,000 of this amount and Patricia Baker and Evelyn Smith Marlow $5,000 each, which were the amounts each of them had paid to Smith at the time of the execution of the settlement agreement.

A dividend is defined in section 115(a), I.R.C. 1939, as "any distribution made by a corporation to its stockholders * * * out of its earnings or profits." A distribution of corporate earnings may constitute a dividend notwithstanding that the formalities of a dividend declaration are not observed, and that it is not in proportion to stockholdings. *Paramount-Richards Theatres, Inc.* v. *Commissioner*, 153 F. 2d 602, 604 (C.A. 5), affirming a Memorandum Opinion of this Court.

On December 31, 1950, Schalk had post-1913 accumulated earnings and profits substantially in excess of the $25,000 distributed in February 1951, and the other beneficiaries who received that distribution were in full control of the corporation. It reimbursed them for the downpayment they made and were obligated to make, pursuant to the terms of the settlement agreement, in consideration for Smith's agreement to sell them his minority interest in the stock of Schalk at the termination of the trust. As already noted, Schalk was not a party to the settlement agreement, did not authorize the payment, and was not obligated, legally or morally, to reimburse them therefor. Its action in reimbursing them for the payment was, therefore, voluntary, and in the absence of any evidence by petitioners that the amount distributed to them did not come from its accumulated earnings and profits, the distribution constituted a dividend as defined in section 115(a), *supra*. Respondent did not err in his determination that the individual petitioners, to the extent that they participated in the distribution, received a dividend.

The third contention of petitioners is that the respondent erred in determining that the payment by Schalk of $20,000 in 1951 constituted a distribution essentially equivalent to a dividend to Hazel I. Farman and Patricia Baker to the extent that the corporation discharged a contractual obligation of these petitioners.

The respondent contends that Schalk in 1951 made a $20,000 distribution in redemption of the minority interest in its stock held by Smith, which the other beneficiaries were contractually obligated to purchase under the terms of the settlement agreement, and that such a distribution is essentially the equivalent of a dividend to them since it operated to discharge their obligation.

Petitioners urge that the settlement agreement gave the other beneficiaries a mere option to purchase Smith's minority stock interest at the time of the termination of the trust, which they did not exercise; that they assigned the option to Schalk; and that the exercise of the option by Schalk did not benefit them directly or indirectly in any appreciable degree and did not discharge any obligation of theirs which would result in a distribution essentially equivalent to the receipt of a dividend. Petitioners cite *Holsey* v. *Commissioner*, 258 F. 2d 865 (C.A. 3), reversing 28 T.C. 962.

Petitioners rely on the paragraph of the settlement agreement which provides that if the other beneficiaries should "fail, neglect or refuse to pay the balance of the purchase price," $20,000, Smith would be released from any obligation to sell his one-sixth stock interest and the other beneficiaries "shall be released of any and all obligations to purchase" the same "or to pay * * * any additional moneys" to Smith.

This isolated provision of the settlement agreement merely restricts the remedy of Smith, in the event the other beneficiaries default and fail to pay the $20,000 balance of the purchase price, to the retention of the $25,000 downpayment. Somewhat similar provisions in other contracts have been held not to give the purchaser a mere option to purchase where other provisions thereof clearly indicate that it was the intention of the parties to enter into a binding contract for the purchase and sale of property. See *Vance* v. *Roberts*, 93 Fla. 379, 118 So. 205; *Wright* v. *Suydam*, 72 Wash. 587, 131 Pac. 239; and cf. *Rodriguez* v. *Barnett*, 333 P. 2d 407 (Cal. App. 1958). Here the settlement agreement provides that "[i]t is distinctly understood and agreed that First Party [Smith] agrees to sell and Second Parties [the other beneficiaries] agree to buy all of the assets of said Trust * * * distributed to First Party upon the termination of said trust" and that the "First Party agrees to sell * * * and Second Parties jointly and severally agree to buy * * * all of the then right, title and interest of First Party in and to the corpus and accumulations * * * of the trust."

Our conclusion is that the other beneficiaries were obligated under the terms of the settlement agreement to purchase, and Smith to sell, Smith's minority interest in the stock of Schalk; that the purchase price was $45,000, $25,000 of which was payable at the time of the execution of the agreement and the remaining $20,000 when the trust terminated; and that the provision upon which petitioners rely did not convert the binding contract for the purchase and sale of Smith's interest into a mere option. When Schalk paid the $20,000 it satisfied a contractual obligation of the other beneficiaries, two of whom, Hazel I. Farman and Patricia Baker, are petitioners in these proceedings. Had the other beneficiaries made the payment it would have cost them $20,000 and they would have become the owners of all of Schalk's outstanding stock. When Schalk assumed their obligation and paid $20,000 in redemption of the 16,666 shares of its stock held by Smith, the other beneficiaries became the owners of all of its outstanding stock without cost to themselves. When the transaction was concluded therefore the other beneficiaries were in substantially the same position they would have been in Schalk had not assumed their obligation and had distributed to them $20,000 and they had used this money to satisfy their obligation to purchase the portion of Schalk's outstanding stock, owned by Smith, which they did not then own. In the circumstances we are convinced that the respondent did not err in his determination that the $20,000 payment by Schalk in 1951 constituted a distribution essentially equivalent to a dividend to Hazel I. Farman and Patricia Baker to the extent that Schalk discharged their contractual obligation, and we so hold. *Wall* v. *United States*, 164 F. 2d 462 (C.A. 4); *Zipp* v. *Commissioner*, 259 F. 2d 119

(C.A. 6), affirming 28 T.C. 314; *Garden State Developers, Inc.*, 30 T.C. 135.

The remaining issue is whether the assessment of deficiencies, determined against petitioners Gerald I. Farman and Hazel I. Farman and petitioners John Carver Baker and Patricia Baker for the year 1951, is barred by the statute of limitations. Deficiency notices were mailed to them within 5 years, but not within 3 years, after their 1951 returns were filed. Assessment of the deficiencies is, therefore, barred under section 275(c), I.R.C. 1939, if they did not omit from their gross income for 1951 an amount properly includible therein in excess of 25 per centum of the reported gross income. In view of our holding in respect of the dividend issue, simple arithmetic demonstrates that there was an omission of more than 25 per cent of gross income; accordingly, assessment of the deficiencies is not barred under section 275(c).

*Decisions will be entered for the respondent.*