VERNON EDLER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edler v. Commissioner
Docket No. 11058-79.
United States Tax Court
T.C. Memo 1982-67; 1982 Tax Ct. Memo LEXIS 674; 43 T.C.M. (CCH) 508; T.C.M. (RIA) 82067; February 11, 1982. *674 Michael J. Christianson, for the petitioner. Dennis Brager, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax in the following amounts: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1974
$ 30,309.37
$ 1,515.46
1975
55,073.23
2,753.66
1976
210,767.89
10,538.39
Due to concessions, the sole issue is whether petitioner received dividend income when Edler Industries, Inc. redeemed stock owned by petitioner's former wife. All the facts have been stipulated and are found accordingly. Petitioner resided in Newport Beach, Calif., when he filed his petition in this case. Edler Industries, Inc. (hereinafter Industries) began business in 1950. During the years in issue, Industries manufactured missile nose cones and related items. At all times herein relevant, petitioner was president of Industries. In 1971, petitioner and his wife at that time, Annette Edler (hereinafter Mrs. Edler or petitioner's former *675 wife), became owners of 100 percent of the 141.11 outstanding shares of Industries. In 1973, petitioner and Mrs. Edler separated and filed for divorce. On August 1, 1975, the Superior Court of California, County of Orange, after a six day nonjury trial, entered an interlocutory judgment of dissolution of marriage. That interlocutory judgment provided, in part: [Petitioner] is awarded as his sole and separate property the following: * * * 141.11 shares of Edler Industries, Inc. stock * * * In order to further effectuate an equal division of the community property, [petitioner] is ordered to execute and deliver a promissory note dated July 1, 1975, payable to Annette M. Edler in the face amount of $ 269,000.00 bearing interest at the rate of six percent (6%) per annum. Pursuant to the interlocutory judgment, petitioner executed a promissory note dated July 1, 1975, to Mrs. Edler in the amount of $ 269,000.00 with interest at the rate of six percent per annum. The note was payable in quarterly installments of $ 6,250 plus interest commencing October 1, 1975; payable in quarterly installments of $ 10,000 plus interest commencing with the eleventh quarter and for ten additional *676 quarters; the balance due and payable on July 1, 1980. The final judgment of dissolution of marriage was entered in January 1976. The only payments made by petitioner on the promissory note were $ 7,599.43 on December 19, 1975, and $ 155.00 on February 18, 1976. In July 1976, Mrs. Edler obtained a writ of execution since petitioner was more than one year in arrears in his payments on the promissory note. As of October 1976, all 141.11 shares of Industries had been delivered to the Orange County Sheriff for the purpose of sale at public auction. On October 1, 1976, petitioner withdrew $ 283,196.43 from Industries for the purpose of bidding on Industries' stock. The $ 283,196.43 was charged to payroll advances on the books of Industries. The sale was never held, and the money was redeposited to Industries. In the meantime, petitioner appealed unsuccessfully the judgment of the Superior Court of California to the California Court of Appeals, Fourth District, Second Division. Petitioner then attempted to attack collaterally the judgment by filing with the Superior Court a Motion to Vacate Levy on Writ of Execution. Said motion was taken under advisement by the Superior Court *677 on September 17, 1976. On October 8, 1976, petitioner and his former wife entered into a settlement agreement. The parties agreed to: cause said Interlocutory Judgment to be modified, whereunder [Mrs. Edler] would give up [her] money judgment position, recall the writ of execution, * * * and substitute, in the place and stead thereof, the delivery * * * of a minority shareholder position in Edler Industries, Inc., ON THE CONDITION that the corporation concurrently, redeem for cash, said minority shares * * * for the same amount of said money, to which [Mrs. Edler] is now entitled. The agreement further provided: any change in the existing Judgment consented to by [Mrs. Edler], has been and is fully conditioned upon the collection of the entire aforementioned proceeds concurrently with the change in the judgment. Pursuant to that agreement, the Superior Court entered an order modifying its previous interlocutory judgment. Such order specifically voided petitioner's obligation to pay on the note to Mrs. Edler. An amended interlocutory judgment of dissolution of marriage, conforming to such order, was filed on October 8, 1976. The amended judgment deleted reference *678 either to petitioner's obligation or to the enforcement and execution of petitioner's promissory note. That judgment also awarded 87.11 shares of Industries to petitioner as his separate property and 54 shares to Mrs. Edler as her separate property. The amended judgment was signed by both parties and was ordered entered, nuncprotunc, as of August 1, 1975. A special meeting of the Board of Directors of Industries was held on October 7, 1976, wherein the Board resolved to offer to purchase the shares of Mrs. Edler for $ 283,500 in cash. On October 8, 1976, Industries paid $ 283,500 to Mrs. Edler in exchange for her 54 shares of Industries, for which Mrs. Edler executed a receipt acknowledging payment in full. [2] Thereafter, the 54 shares of Industries were retained by Industries as treasury stock. Petitioner on his 1976 income tax return did not include any portion of the $ 283,500 paid by Industries to Mrs. Edler in his gross income. In his notice of deficiency, respondent determined that the payment of $ 283,500 to Mrs. Edler was a constructive dividend to petitioner. *679 OPINION The issue is whether the stock redemption resulted in a constructive dividend to petitioner. We are faced with the rule that where a corporation redeems stock which its remaining shareholder was obligated to buy, the remaining shareholder receives a constructive dividend. Wall v. United States,164 F.2d 462 (4th Cir. 1947). However, the rule of Wall has been limited to those circumstances where the obligation of the purchasing shareholder is both primary and unconditional. Enoch v. Commissioner,57 T.C. 781 (1972); Priester v. Commissioner,38 T.C. 316 (1962). [3] If, on the other hand, the corporation redeems stock which the remaining shareholder was not obligated to buy, no constructive dividend is received by that shareholder. Edenfield v. Commissioner,19 T.C. 13 (1952). Applying the above rules, certain disparate tax consequences become apparent. When two shareholders own *680 a corporation, there is no practical economic difference between using a stock redemption and using a dividend distribution to the remaining shareholder to fund the acquisition of the selling shareholder's stock. Nevertheless, the tax consequences to the remaining shareholder are profoundly different. A knowledgeable shareholder could negotiate a redemption by the corporation and escape harsh tax consequences to himself; whereas, a less knowledgeable shareholder might unwillingly commit himself to effect the purchase and be threatened with an unintended dividend. Except for the tax consequences, the shareholders' economic positions are identical. Obviously, in this area of the tax law, the form employed is critical and taxpayers are free to choose the form most beneficial to themselves. It is against this background that the rule of Wall has been limited to circumstances where the obligation which has been discharged is both primary and unconditional. [4]
*681 Relying on Wall, respondent cites several California cases and the California Civil Code for the proposition that petitioner was under a binding legal obligation to pay on the promissory note. Petitioner contends Wall is inapplicable since the modifying order of the divorce court voided his obligation on the promissory note. For the reasons below, we find for petitioner. In support of his position, respondent makes reference to state law. Section 4800(b)(1) of the California Civil Code contemplates that, in a divorce action, where the major item of community property is not reasonably subject to division, it may be awarded to one party and the other party shall be compensated in some manner so as to maintain an equal division. Marriage of Tammen,63 Cal. App. 3d 927, 134 Cal. Rptr. 161 (1976). The Supreme Court of California has approved the use of promissory notes to effect an equal division of community property. Marriage of Connolly,23 Cal. 3d 590, 153 Cal. Rptr. 423 (1979). Relying on the above state law, respondent asserts that the California Supreme Court would have undoubtedly enforced petitioner's promissory note. Citing Commissioner v. Estate of Bosch,387 U.S. 456 (1967), *682 respondent concludes petitioner was under a binding legal obligation since this Court is bound to apply the decision that would have been reached by the highest state authority. However, none of those arguments address the direct legal effect of the divorce court's modifying order. The amended judgment of dissolution of marriage, which was signed by both parties, was ordered by the divorce court to be entered nuncprotunc as of August 1, 1975, the date of the original decree. Such order specifically voided petitioner's obligation to pay on the promissory note. In addition, the amended judgment deleted reference both to petitioner's obligation and to the execution and enforcement of the promissory note. Respondent does not question the ability of the divorce court to modify its own judgment. Here, petitioner's obligation was specifically voided by the same court that imposed such obligation. Moreover, Mrs. Edler, the party to whom petitioner's obligation ran, expressly consented to the judgment, as modified. Under these circumstances, we refuse to ignore the effect of that order which modified the original judgment. We find that the divorce decree, as modified, *683 imposed no obligation on petitioner. Furthermore, the parties' settlement agreement, which determines the parties legal relationship, does not mandate a different result. We emphasize this is an area of the tax law in which not only to the "formalities of handling a particular transaction assume a disproportionate importance," Waltham Netoco Theatres, Inc. v. Commissioner,49 T.C. 399, 404 (1968), affd. 401 F.2d 333 (1st Cir. 1968); but rather the formalities are all important. A taxpayer is certainly free to choose that form most beneficial to himself. We do not have before us a case where a taxpayer chose the wrong form to begin with or a case where a taxpayer could have easily avoided dividend treatment. [5] Petitioner's obligation arose out of the decree of a divorce court. After the divorce decree was entered, petitioner (1) appealed that judgment, (2) collaterally attacked that judgment, and (3) finally succeeded in having his obligation voided by the same court that imposed such obligation. Meanwhile, petitioner's biggest hurdle remained the well-protected interest of Mrs. Edler. Following the sound advice of counsel, Mrs. Edler *684 did not release petitioner from his obligation; but she did agree to look first to the corporation for payment. In fact, the corporation redeemed her shares and retained those shares as treasury stock. Under the parties' settlement agreement, Mrs. Edler agreed to look first to the corporation for payment and not until and unless the corporation failed to redeem her stock, did Mrs. Edler look to petitioner for payment. Thus, in view of these circumstances, petitioner's obligation was not "primary" for purposes of imposing dividend treatment on petitioner. Accordingly, petitioner received no constructive dividend when Industries redeemed his former wife's stock. To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. At all times relevant, Industries had earnings and profits in excess of $ 283,500.↩
3. See also Williams v. Commissioner,T.C. Memo. 1976-368; Rev. Rul. 69-608, 1969-2 C.B. 42↩.
4. In addition such stock acquisitions do not carry the economic benefit normally associated with the receipt of a dividend. See Holsey v. Commissioner,258 F.2d 865 (3d Cir. 1958); Niederkrome v. Commissioner,266 F.2d 238 (9th Cir. 1958). In reality the purchasing shareholder is no wealthier after the transaction than before the transaction. He has received nothing except a proportionate increase in the reduced assets of the corporation. See Bennett v. Commissioner,58 T.C. 381 (1972), cf. Yelencsics v. Commissioner,74 T.C. 1513↩ (1980).
5. Cf. Jacobs v. Commissioner,T.C. Memo. 1981-81↩.