**Daniel JACOBS, et al.,
Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 81–1376.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1982.

Decided Feb. 2, 1983.

Stephen M. Hester (argued), Millikin & Fitton, Hamilton, Ohio, for petitioners-appellants.

Jerome D. Sebastian, Acting Chief Counsel, I.R.S., Kenneth Greene (argued), John F. Murray, Michael L. Paup, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before LIVELY and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

This is an appeal by Daniel Jacobs (Jacobs) and Paul Schurger (Schurger) (collectively referred to *infra* as "the taxpayers") from a decision of the United States Tax Court, entered on February 25, 1981, which upheld determinations by the Commissioner of Internal Revenue (IRS, or the Service) that deficiencies existed in the appellants' 1975 federal personal income tax returns as the result of a constructive dividend. Margaret Jacobs and Ann Schurger are listed here as appellants solely by virtue of having filed joint returns with their husbands.

All the facts but the ultimate fact at issue are either stipulated or not contested. In early 1975, one Michael Davis (Davis) sold 49 shares of the total 100 shares of Central Forwarding Co. (Central), all of which shares were then owned by Davis, to Jacobs, Schurger and Peter DePascale (De-Pascale), a third party not involved herein. Each vendee received 16⅓ shares of Central and each utilized personal funds for the purchase. On April 4, 1975, Jacobs, Schurger and DePascale entered into a written agreement with Davis whereby the taxpayers and DePascale each purchased an additional 11⅔ shares of Central and further agreed to purchase the final remaining 16 shares from Davis within one year.

Sometime between April 4 and May 9, 1975, Jacobs, Schurger and DePascale, at that time the controlling stockholders in Central, proposed that the company, rather than the individual shareholders, purchase the remaining 16 shares held by Davis. Davis testified before the Tax Court that he was indifferent as to whether his shares were bought out with corporate funds or with the personal funds of the investors. Davis, however, never executed any writing releasing Jacobs, Schurger and DePascale from their personal obligation contained in the April 4 agreement to purchase Davis' interest in the company within one year. Accordingly, on May 9, 1975, all of Central's shareholders authorized the expenditure of corporate funds to redeem Davis' shares and to retain them as treasury stock for future reissuance. The company thereupon immediately purchased six shares and proposed to enter into a contract for the remaining ten; however, no written agreement so obligating Central was ever executed.

By October 1, 1975, Central had purchased the last of the ten shares still held by Davis at the price set by the April 4 agreement among the individual shareholders, but the purchase was completed exclusively employing corporate funds. On January 20, 1976, this treasury stock held by Central was reissued to Jacobs, Schurger and DePascale in certificates of 5⅓ shares each.

The IRS found that Jacobs, Schurger and DePascale each received a constructive dividend when Central purchased Davis' stock, in that the company thereby discharged the otherwise binding individual obligation to purchase those shares. Accordingly, defi-

ciencies were assessed against Jacobs in the amount of $469.33 for 1975, and against Schurger in the sum of $832. The taxpayers sought a redetermination in the Tax Court, which upheld the finding of deficiencies.

■ The question of dividend equivalency is, and long has been, one of fact. *Wilkof v. Commissioner,* 636 F.2d 1139, 1140 (6th Cir.1981) *(per curiam); Apschnikat v. United States,* 421 F.2d 910, 913 (6th Cir. 1970). Accordingly, as the Court stated in the recent case of *Ohio Teamsters, etc. v. Commissioner,* 692 F.2d 432 (6th Cir.1982):

> Where the judgment below is ultimately a finding of fact, it is well-settled that the determination of the Tax Court is binding on the appellate court unless clearly erroneous. *Owens v. Commissioner,* 568 F.2d 1233 (6th Cir.1977). Moreover, because the Tax Court is constituted as "the basic fact-finding and inference-making body," *Boehm v. Commissioner,* 326 U.S. 287 [66 S.Ct. 120, 90 L.Ed. 78] (1945), the Court of Appeals is bound to accept "factual inferences from undisputed basic facts" unless such inferences are themselves clearly erroneous. *Commissioner v. Duberstein,* 363 U.S. 278 [80 S.Ct. 1190, 24 L.Ed.2d 1218] (1960). *Accord, Tennessee Securities, Inc. v. Commissioner,* 674 F.2d 570 (6th Cir.1982).

At 435.

■ The precise factual inquiry in the matter *sub judice* therefore is whether the taxpayers were primarily and unconditionally obligated to purchase Davis' shares in Central at the time the company actually redeemed those shares. *Adams v. Commissioner,* 594 F.2d 657 (8th Cir.1979); *Stephens v. Commissioner,* 60 T.C. 1004 (1973), *aff'd by order* 506 F.2d 1400 (6th Cir.1974). Upon review, this Court is constrained to conclude that the Tax Court was not clearly erroneous in its determination of fact, and its judgment is accordingly affirmed.