MARY RUTH HAYES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JIMMY L. HAYES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 26913–91, 30646–91.     Filed December 29, 1993.

---

Mary Ruth Hayes, pro se in docket No. 26913–91.
*Kevin C. Johnson,* for petitioner in docket No. 30646–91.
*Katherine Lee Wambsgans,* for respondent.

CHIECHI, *Judge:* Respondent determined the following deficiencies in Federal income tax with respect to petitioner Jimmy L. Hayes (Mr. Hayes) and petitioner Mary Ruth Hayes (Ms. Hayes):

| Petitioner | Year | Deficiency |
|---|---|---|
| Jimmy L. Hayes | 1986 | $56,527 |
| | 1987 | 5,390 |
| Mary Ruth Hayes | 1986 | 18,608 |
| | 1987 | 3,925 |

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time their respective petitions were filed, Mr. Hayes and Ms. Hayes resided at separate addresses in Shaker Heights, Ohio.

Mr. Hayes and Ms. Hayes married in 1953. Divorce proceedings to end their marriage were pending during 1986. At the time of their divorce in 1986, Mr. Hayes and Ms. Hayes were sole shareholders in JRE, Inc. (JRE), a corporation which operated a franchise from McDonald's Corp. (McDonald's). Mr. Hayes held a majority of the stock of JRE, while Ms. Hayes held the remainder. Because of the pending divorce of Mr. Hayes and Ms. Hayes, McDonald's required Ms. Hayes to dispose of her stock interest in JRE in order for Mr. Hayes to retain the franchise.

On April 2, 1986, Mr. Hayes and Ms. Hayes executed a separation agreement (the separation agreement) in the presence of their respective counsel, which obligated Mr. Hayes to purchase Ms. Hayes' stock in JRE for $128,000. Mr. Hayes was to pay $100,000 of the total purchase price within 30 days of the date of the separation agreement and two additional installments of $14,000 each on September 30, 1986, and March 31, 1987.

The separation agreement further provided that it could be modified only in writing and that it would be incorporated into any final divorce decree entered by a court with respect to the couple. The separation agreement also stated that, notwithstanding any such incorporation, it

shall not be deemed to have merged into any final decree or order entered into by any court, but rather shall remain an enforceable agreement by and/or against the parties, and the terms hereof shall survive independent of any such decree or order.

On April 4, 1986, Mr. Hayes' attorney, Joseph H. Blackwell, wrote a letter (the Blackwell letter) to Ms. Hayes' counsel, Harvey Snider. The Blackwell letter indicated that Mr. Hayes did not have the money to consummate his purchase of Ms. Hayes' stock in JRE that was required by the terms of the separation agreement. Mr. Hayes did not have the money to pay for that stock because of his poor cash management practices. The Blackwell letter also stated that Mr. Hayes would incur a large Federal income tax liability if he were to withdraw money from JRE in order to effectuate that acquisition. The Blackwell letter then proposed that JRE redeem[1] Ms. Hayes' stock, since Ms. Hayes' tax on such a

---

[1] When applied to the transaction at issue herein, the use of the terms "redeem" or "redemp-

redemption would be lower than the tax Mr. Hayes would have to pay were JRE to distribute a dividend which he would use to purchase her stock.

On May 27, 1986, Donald M. Boehm, Mr. Hayes' and JRE's accountant, wrote a letter to Mr. Hayes' former counsel in which he recommended that JRE, rather than Mr. Hayes, purchase Ms. Hayes' stock in JRE.

At or subsequent to the time the separation agreement was executed, the referee hearing the divorce case became impatient with its progress and threatened to dismiss it if Mr. Hayes and Ms. Hayes could not reach agreement on all outstanding issues relating to their divorce.

On June 4, 1986, the Court of Common Pleas for Cuyahoga County (court of common pleas) entered a judgment in the Hayes' divorce proceeding (the original judgment), which granted Ms. Hayes a divorce, incorporated the separation agreement into its judgment, and ordered that agreement into full force and effect. Also on June 4, 1986, Ms. Hayes and JRE executed an agreement (the redemption agreement) under which JRE agreed to redeem her stock for $128,000. The redemption agreement stated that Ms. Hayes had decided to retire for reasons of health and that JRE's board had voted unanimously (with Ms. Hayes' abstaining) to purchase her stock. The redemption agreement also stated that JRE had sufficient surplus to effect the redemption. Pursuant to that agreement, JRE was obligated to deliver a check for $128,000 to Ms. Hayes upon surrender of her stock. Ms. Hayes received from JRE a check in the amount of $114,000 on December 31, 1986, and a check for $14,000 on March 31, 1987.

The redemption agreement made no reference to the separation agreement or to the pending divorce action. Nor was the separation agreement modified in connection with the execution of the redemption agreement.

On March 3, 1987, an order was entered by the court of common pleas in the Hayes' divorce case, which stated that it was correcting the original judgment nunc pro tunc (the nunc pro tunc order). The nunc pro tunc order provided that the terms of the original judgment, which required Mr.

---

tion" are for descriptive purposes only and do not reflect our conclusion as to the nature of that transaction under the Federal income tax laws.

Hayes to buy Ms. Hayes' stock of JRE, were changed to provide that Ms. Hayes agreed to transfer to JRE, and JRE agreed to redeem from Ms. Hayes, her JRE stock. Although the terms of payment under the nunc pro tunc order were the same as originally provided for in the separation agreement, the first payment by JRE was not made in the amount or at the time specified by the nunc pro tunc order, while the second payment was.

Neither Mr. Hayes nor Ms. Hayes reported any income from the redemption of Ms. Hayes' JRE stock on their separate 1986 and 1987 Federal income tax returns. Respondent issued a separate notice of deficiency to each of them in connection with that redemption. In the notice of deficiency issued to Mr. Hayes, respondent determined that the redemption of Ms. Hayes' stock in JRE resulted in a constructive dividend to him. In the notice of deficiency issued to Ms. Hayes, respondent determined that Ms. Hayes realized a long-term capital gain from the redemption of her stock in JRE.

## OPINION

Each petitioner bears the burden of demonstrating error in the respective determinations made by respondent. Rule 142(a). Respondent has informed the Court that the determinations made against Mr. Hayes and Ms. Hayes are alternative determinations. Thus, respondent concedes that if one of the petitioners is held liable for tax in connection with the redemption of Ms. Hayes' stock in JRE, the other petitioner will not be liable for any such tax.

Although respondent's role in these two cases is that of a stakeholder, she nonetheless argues that the tax incurred as a result of the redemption of Ms. Hayes' stock in JRE should be borne by Mr. Hayes because JRE's redemption was made on his behalf and therefore constituted a constructive dividend to him. If we were to accept respondent's argument, Ms. Hayes would be shielded by section 1041[2] from recognizing gain on the redemption. That section provides nonrecognition treatment for a transfer of property between spouses or former spouses where the transfer is incident to a divorce.

---

[2] All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Q&A 9 of section 1.1041-1T(c), Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984), confirms this result as to Ms. Hayes if we were to adopt respondent's position. There, it is provided that, where one spouse transfers property to a third party on behalf of the other spouse, the transfer is treated as if the transferring spouse transfers the property to the nontransferring spouse, who then transfers it to the third party. Consequently, under respondent's position, Ms. Hayes would be treated as if she had transferred her stock in JRE to Mr. Hayes, who then transferred it to JRE.[3]

Respondent claims that JRE's redemption of Ms. Hayes' stock constituted a constructive dividend to Mr. Hayes because the separation agreement created an obligation in Mr. Hayes, and not JRE, to purchase Ms. Hayes' stock and that that obligation was validly incorporated into the original judgment of divorce. Respondent argues that the nunc pro tunc order should not be given effect for tax purposes because it did not represent the intention of the parties at the time the original judgment was entered, but rather effected a change in the obligations imposed by that judgment.

Ms. Hayes contends that, in substance, the redemption of her JRE stock was a transfer of such stock by her to Mr. Hayes, who in turn transferred it to JRE. Ms. Hayes argues that therefore section 1041 shields her from recognition of gain on that redemption.

Mr. Hayes contends that the provision in the original judgment obligating him to purchase Ms. Hayes' stock in JRE was erroneous and that the nunc pro tunc order retroactively corrected it. He argues that the judgment as corrected by the nunc pro tunc order obligated JRE, and not him, to purchase Ms. Hayes' stock and that therefore JRE's redemption of the stock did not result in a constructive dividend to him.

Whether a corporation has satisfied a shareholder's obligation, thus giving rise to a constructive dividend, is a question

---

[3] Even if we were not to agree with respondent that Mr. Hayes should bear the tax associated with the transaction at issue here, a question may still arise as to whether sec. 1041 would in any event protect Ms. Hayes from recognizing a long-term capital gain on the disposition of her stock. In this regard, we note that the U.S. Court of Appeals for the Ninth Circuit has held in *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992), that sec. 1041 may afford nonrecognition treatment to a spouse whose stock is redeemed pursuant to a divorce decree where the redemption confers a benefit on the other spouse because the other spouse has guaranteed the corporation's performance. However, inasmuch as the instant cases do not present the same situation as in *Arnes*, we need not address the Ninth Circuit's decision.

of fact. *Jacobs v. Commissioner,* 698 F.2d 850, 852 (6th Cir. 1983), affg. per curiam T.C. Memo. 1981-81; *Priester v. Commissioner,* 38 T.C. 316, 324-325 (1962).

It is well settled that a shareholder receives a constructive dividend to the extent of available earnings and profits when a corporation redeems stock which that shareholder has a primary and unconditional obligation to purchase.[4] *Sullivan v. United States,* 363 F.2d 724, 728-729 (8th Cir. 1966); *Smith v. Commissioner,* 70 T.C. 651, 668 (1978); *Stephens v. Commissioner,* 60 T.C. 1004, 1011-1012 (1973), affd. without published opinion 506 F.2d 1400 (6th Cir. 1974). The fact that the corporation may have agreed to perform the shareholder's obligation prior to redeeming the stock does not change this result, provided that the shareholder's obligation continues until the time of the redemption. *Wall v. United States,* 164 F.2d 462, 464-465 (4th Cir. 1947); *Vinnell v. Commissioner,* 52 T.C. 934, 944-945 (1969); *Wolf v. Commissioner,* 43 T.C. 652, 660-661 (1965), affd. 357 F.2d 483 (9th Cir. 1966); *Schalk Chemical Co. v. Commissioner,* 32 T.C. 879, 892 (1959), affd. 304 F.2d 48 (9th Cir. 1962).

A shareholder also receives a constructive dividend to the extent of available earnings and profits when a corporation agrees to perform that shareholder's obligation and that shareholder's obligation is thereby extinguished. See *Maher v. Commissioner,* 469 F.2d 225, 229 (8th Cir. 1972), affg. in part, revg. and remanding on another issue 55 T.C. 441 (1970); *Sullivan v. United States, supra* at 728 n.5. In *Maher v. Commissioner, supra,* the court stated that a corporation's cancellation of a shareholder's liability can produce a taxable economic benefit to the extent the shareholder's assets are freed as a result of the corporation's act.

Thus, regardless whether a shareholder's obligation is satisfied at the time a corporation actually performs it or is canceled at the time a corporation agrees to perform it, that shareholder receives a constructive dividend, with the only difference being the time at which the dividend is taxable.

To apply the foregoing principles to the facts presented in the instant cases, we must identify the nature and extent of the obligations imposed and rights conferred by the separa-

---

[4] There is no suggestion by any of the parties that Mr. Hayes did not have a constructive dividend because JRE's earnings and profits were inadequate. The redemption agreement states that JRE had sufficient surplus to pay the agreed price for Ms. Hayes' stock.

tion agreement, the redemption agreement, the original judgment, and the nunc pro tunc order. We must resolve these questions by reference to Ohio law. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 464-465 (1967); *Morgan v. Commissioner,* 309 U.S. 78, 80 (1940); *Krakoff v. United States,* 439 F.2d 1023, 1025 (6th Cir. 1971); *Emmons v. Commissioner,* 36 T.C. 728, 735 (1961), affd. by order 311 F.2d 223 (6th Cir. 1962). Under *Commissioner v. Estate of Bosch, supra* at 465, we must apply the law as announced by the Supreme Court of Ohio, and, if there is no decision by that highest court, we must apply what we find to be the law of Ohio, giving proper regard to the decisions of other courts of the State.

We will first consider the effect of the separation agreement. That agreement obligated Mr. Hayes to purchase Ms. Hayes' stock in JRE for $128,000, which was to be paid pursuant to a specified schedule. On brief, Mr. Hayes, who was not present at trial, attempts to minimize the importance of that provision in the separation agreement by arguing alternatively that it did not obligate him personally to purchase Ms. Hayes' stock in JRE and that the provision setting forth Mr. Hayes' obligation did not reflect the agreement of the parties. Ms. Hayes, who appeared as the only witness at the trial of these cases and whom we found to be totally credible, maintains that that provision in the separation agreement specifies "the way the divorce settlement should have gone."

We are not inclined to accept Mr. Hayes' characterization of the pertinent provision in the separation agreement. The separation agreement is unambiguous. It was signed by Mr. Hayes and Ms. Hayes in the presence of their attorneys, and the page in that agreement setting forth Mr. Hayes' obligation to purchase Ms. Hayes' stock was initialed by both Mr. Hayes and Ms. Hayes. The terms of the separation agreement show that Mr. Hayes and Ms. Hayes intended it to have present effect as to the division of their property and the release of claims against one another that are reflected therein. There is no indication in the separation agreement, or elsewhere in the record, that Mr. Hayes was acting as an agent for JRE with respect to the purchase of Ms. Hayes' stock.[5] Consequently, we conclude that the separation agree-

---

[5] Thus, the instant case is distinguishable from *Nichols v. Commissioner,* T.C. Memo. 1973-114, relied on by Mr. Hayes.

ment, as executed by Mr. Hayes and Ms. Hayes, constituted a valid, binding contract under Ohio law, which imposed on Mr. Hayes a primary and unconditional obligation to purchase Ms. Hayes' stock in JRE.

We further find that the separation agreement clearly continued to have binding effect at least until the original judgment in the divorce proceeding was entered on June 4, 1986. The separation agreement provided that it could not be modified except in writing, and no writing evidencing a clearly expressed intent to modify the separation agreement has been placed in the record.[6] None of the legal documents in the record connected with the redemption transaction makes any reference to the separation agreement. Indeed, the redemption agreement itself makes no reference to either the separation agreement or the divorce of Mr. Hayes and Ms. Hayes.

It appears that, notwithstanding the antimerger clause in the separation agreement, each of the provisions of the separation agreement that was in fact incorporated in the judgment of divorce of the court of common pleas would nonetheless be considered under Ohio law to have merged into such judgment when the original judgment was entered.[7] *Cherry v. Figart,* 620 N.E.2d 174 (Ohio Ct. App. 1993). However, this circumstance would not affect the validity of the separation agreement prior to that time. Merger is prospective from the time of judgment, and entry of judgment does not affect the validity of the contractual undertaking prior to that time. *Bourque v. Bourque,* 518 N.E.2d 49, 51 (Ohio Ct. App. 1986).

We next will consider whether the nunc pro tunc order is to be given effect for Federal tax purposes, an issue to which Mr. Hayes and respondent have devoted a considerable portion of their briefs. If we decide that the nunc pro tunc order

---

[6] Although Ms. Hayes testified about a handwritten document initialed by her during the divorce proceedings that she believed provided that JRE would acquire her stock, we find her testimony ambiguous. It does not appear that Ms. Hayes read any such handwritten document when she initialed it, and no such document is in evidence. The only handwritten documents in the record consist of certain pages in the separation agreement, none of which provides for a redemption of Ms. Hayes' stock. Indeed, it is one of the handwritten pages that is part of the separation agreement and that was initialed by both Mr. Hayes and Ms. Hayes, which obligates Mr. Hayes to purchase Ms. Hayes' stock in JRE.

[7] As a general matter, under Ohio law, terms of a separation agreement incorporated into a divorce judgment merge with that judgment, lose their contractual character, and become enforceable only as part of that judgment. *Rosenfeld v. Rosenfeld,* 351 N.E.2d 181 (Ohio 1976); *Greiner v. Greiner,* 399 N.E.2d 571, 578 (Ohio Ct. App. 1979); *Bugay v. Bugay,* 373 N.E.2d 1263, 1265 (Ohio Ct. App. 1977).

is contrary to the law of Ohio, we must disregard it for Federal tax purposes even though it may be binding on the parties to it.[8] *Graham v. Commissioner,* 79 T.C. 415, 420 (1982).

Mr. Hayes contends that the nunc pro tunc order of the Court of Common Pleas was valid and that it shows that he did not have an obligation to purchase Ms. Hayes' stock in JRE when the redemption occurred, precluding him from receiving a constructive dividend.

Respondent argues that the nunc pro tunc order is not valid because it is contrary to Ohio law. If entry of the nunc pro tunc order were not valid, as respondent contends, Mr. Hayes would have received a constructive dividend upon JRE's redemption of Ms. Hayes' stock because that redemption would have satisfied the primary and unconditional obligation of Mr. Hayes to purchase Ms. Hayes' stock in JRE, which was imposed on him by the original judgment that incorporated the separation agreement.[9] *Sullivan v. United States,* 363 F.2d at 728-729; *Smith v. Commissioner,* 70 T.C. at 668; *Stephens v. Commissioner,* 60 T.C. at 1011-1012; *Gordon v. Commissioner,* T.C. Memo. 1975-86; *Berger v. Commissioner,* T.C. Memo. 1974-172, affd. without published opinion 538 F.2d 334 (9th Cir. 1976).

Under Ohio law, a court may enter an order correcting the journal entry of its judgment nunc pro tunc only to remedy an error in the recording of the actual judgment, so that the record reflects what the court actually decided. *State ex rel. Phillips v. Industrial Comm.,* 155 N.E. 798 (Ohio 1927); *Reinbolt v. Reinbolt,* 147 N.E. 808 (Ohio 1925). Such an order may not be used to change the judgment of the court. *Webb v. Western Reserve Bond & Share Co.,* 153 N.E. 289 (Ohio 1926); *Roth v. Roth,* 585 N.E.2d 482 (Ohio Ct. App. 1989); *McKay v. McKay,* 493 N.E.2d 317 (Ohio Ct. App. 1985).

---

[8] However, as discussed below, even if we were to decide that the nunc pro tunc order were valid, it is our view that Mr. Hayes nevertheless received a constructive dividend under the facts and circumstances presented here.

[9] The execution of the redemption agreement would not insulate Mr. Hayes from receipt of a constructive dividend in this situation because, in agreeing to redeem Ms. Hayes' stock, JRE was simply undertaking to perform a primary and unconditional obligation imposed on Mr. Hayes by the original judgment. *Sullivan v. United States,* 363 F.2d 724, 728-729 (8th Cir. 1966); *Wall v. United States,* 164 F.2d 462, 466 (4th Cir. 1947); *Schalk Chemical Co. v. Commissioner,* 32 T.C. 879, 892 (1959), affd. 304 F.2d 48 (9th Cir. 1962). If the nunc pro tunc order were not valid, when JRE redeemed Ms. Hayes' stock pursuant to the redemption agreement, JRE would have been satisfying Mr. Hayes' obligation under the original judgment, which he was unable to perform due to his lack of funds, resulting in a constructive dividend to him. *Smith v. Commissioner,* 70 T.C. 651, 670 (1978).

Because a judgment, once entered, is presumed valid, *Cupicha v. Sefchick,* 173 N.E.2d 901, 903 (Ohio Ct. App. 1961), sufficient grounds for entry of an order changing a judgment nunc pro tunc must be present before a court may do so. *Jacks v. Adamson,* 47 N.E. 48 (Ohio 1897); *Gill v. Pelkey,* 43 N.E. 991 (Ohio 1896); *State v. Coleman,* 169 N.E.2d 703, 706 (Ohio Ct. App. 1959); *Cleveland Trust Co. v. Forkapa,* 117 N.E.2d 442 (Ohio Ct. App. 1954); *Herman v. Ohio Finance Co.,* 32 N.E.2d 28, 31 (Ohio Ct. App. 1940); *Ruby v. Wolf,* 177 N.E. 240 (Ohio App. 1931). For such an order to be proper, the court entering the order must have clear and convincing evidence of the actual judgment of the court with respect to which a correction of the journal entry is sought. *Jacks v. Adamson, supra; Gill v. Pelkey, supra; State v. Coleman, supra; Cleveland Trust Co. v. Forkapa, supra; Ruby v. Wolf, supra.* Moreover, the judgment correcting the earlier journal entry nunc pro tunc must affirmatively show not only what it is intended to correct, but also the ground upon which the court acted in making the correction. *State v. Coleman, supra; Herman v. Ohio Finance Co., supra; Ruby v. Wolf, supra.* In deciding whether to correct a judgment nunc pro tunc, a court may rely on, among other things, its own recollection, minutes made by it, the papers in the case, and/or oral testimony. *Jacks v. Adamson, supra; Elliott v. Plattor,* 1 N.E. 222, 225 (Ohio 1885); *Ruby v. Wolf, supra.*

Based on the record in the present cases, we agree with respondent that entry of the nunc pro tunc order was contrary to the law of Ohio because it did not comply with the foregoing requirements of that law.[10] The instant record contains nothing, except the original judgment, the separation agreement, and the redemption agreement, which shows what the court of common pleas might have had in mind when it entered that judgment. No memorandum, minutes of proceedings, transcript, or other evidence was offered at the trial of this case to show what the actual judgment of the

[10] The instant cases are distinguishable from *Edler v. Commissioner,* T.C. Memo. 1982-67, affd. 727 F.2d 857 (9th Cir. 1984), relied on by Mr. Hayes. In the *Edler* case, we held that a husband did not receive a constructive dividend from a redemption carried out pursuant to a nunc pro tunc order where the validity of the nunc pro tunc order was not challenged by the Commissioner and it specifically voided the husband's obligation under a prior judgment. Here, in contrast to the *Edler* case, respondent has challenged the validity of the nunc pro tunc order, and we have found it to be contrary to Ohio law and of no effect for Federal tax purposes.

court of common pleas was at the time the original judgment was entered.

Although the redemption agreement was executed on the same day on which the original judgment was entered, there is no evidence that it had been presented to the court of common pleas or to the referee hearing the divorce case at the time the judgment entry was made. It seems to us that the redemption agreement could easily have been referred to in the original judgment had it been before the court of common pleas or the referee at the time that judgment was entered.

Nor is there any indication in the instant record that the court of common pleas was aware of Mr. Hayes' financial difficulties or of the tax considerations that motivated his advisers to seek a change in the manner in which Ms. Hayes' stock in JRE would be acquired.

Thus, except for the original judgment itself, the record in this case is devoid of the evidence with respect to the court of common pleas' decision at the time the original judgment was entered that is needed for this Court to conclude that the nunc pro tunc order is valid under Ohio law. *Jacks v. Adamson, supra; Gill v. Pelkey, supra; State v. Coleman, supra; Cleveland Trust Co. v. Forkapa, supra; Ruby v. Wolf, supra.*

It is also significant that the nunc pro tunc order itself does not indicate why the original judgment was erroneous, as required under Ohio law. *State v. Coleman, supra; Herman v. Ohio Finance Co., supra; Ruby v. Wolf, supra.* It simply states the change being made in the original judgment, without explaining why the court of common pleas decided that the original judgment was incorrectly recorded. The fact that attorneys for Mr. Hayes and Ms. Hayes joined in making the motion to correct the original judgment does not establish that the original judgment was erroneously recorded. The attorneys could have agreed to make the motion for collateral reasons, and the court of common pleas' apparent pro forma acceptance of their agreed motion does not supply the necessary justification for entry of the nunc pro tunc order.

Based on the record here and the foregoing considerations, we conclude that the nunc pro tunc order is not valid because it is contrary to Ohio law. On the instant record, we find that that order operated to change retroactively the rights of the

parties to the divorce action, rather than to correct an error in the original judgment. Under such circumstances, it should not be given effect for Federal tax purposes. *Graham v. Commissioner,* 79 T.C. at 420. Accordingly, we sustain respondent's determination that Mr. Hayes received a constructive dividend as a result of JRE's redemption of Ms. Hayes' stock because that redemption satisfied a primary and unconditional obligation to purchase that stock, which was imposed on him by the original judgment.

We note that, even if entry of the nunc pro tunc order were proper, as Mr. Hayes contends, the order would not have prevented him from receiving a constructive dividend under the circumstances surrounding JRE's redemption of Ms. Hayes' stock. In order for the judgment of the court of common pleas to have been entered on the basis stated in the nunc pro tunc order, JRE would necessarily have had to obligate itself to redeem Ms. Hayes' stock prior to the entry of the original judgment, while Mr. Hayes was still subject to a primary and unconditional obligation under the separation agreement to purchase that stock. *Webb v. Western Reserve Bond & Share Co.,* 153 N.E. 289 (Ohio 1926); *Roth v. Roth,* 585 N.E.2d at 484. If, as Mr. Hayes also contends, entry of judgment on the terms stated in the nunc pro tunc order extinguished his obligation to purchase Ms. Hayes' stock in JRE under the separation agreement,[11] Mr. Hayes still would have received a constructive dividend by virtue of JRE's assumption of his obligation, albeit at the time judgment was entered, rather than at the time Ms. Hayes' stock was redeemed by JRE. See *Maher v. Commissioner,* 469 F.2d at 229; *Sullivan v. United States,* 363 F.2d at 728 n.5. However, inasmuch as respond-

---

[11] It is not clear that Mr. Hayes' obligation under the separation agreement to purchase Ms. Hayes' stock would have been extinguished by a valid entry of judgment in accordance with the terms stated in the nunc pro tunc order. That obligation could have survived such an entry of judgment on at least two grounds. First, the court of common pleas, in entering such a judgment, could have intended that JRE act on behalf of Mr. Hayes, whose obligation to purchase her stock was unambiguously set forth in the separation agreement which that court reviewed and considered. Second, it is possible that the provision of the separation agreement obligating Mr. Hayes to purchase Ms. Hayes' stock in JRE might not have been incorporated into and thereby merged with a valid judgment of divorce entered on the terms stated in the nunc pro tunc order. Thus, that provision of the separation agreement may have continued to impose an obligation on Mr. Hayes after entry of a valid nunc pro tunc order, which would not have been satisfied until JRE redeemed Ms. Hayes' stock. If his obligation under the separation agreement had survived a valid entry of judgment in accordance with the nunc pro tunc order, Mr. Hayes would have received a constructive dividend when Ms. Hayes' stock was redeemed. *Sullivan v. United States,* 363 F.2d at 728-729; *Wall v. United States,* 164 F.2d at 464-466; *Vinnell v. Commissioner,* 52 T.C. 934, 944-945 (1969); *Schalk Chemical Co. v. Commissioner,* 32 T.C. at 892.

ent's determination that Mr. Hayes received a constructive dividend from JRE when it made the payments in redemption of Ms. Hayes' stock is not in dispute insofar as the timing of Mr. Hayes' recognition of the income is concerned, and that determination has not been shown to be erroneous, we will not disturb it.

Respondent has indicated to the Court that, if we find that Mr. Hayes received a constructive dividend in connection with JRE's undertaking to redeem Ms. Hayes' stock, as we have done, she will concede that section 1041 shields Ms. Hayes from recognition of gain on the amount realized from the exchange of her stock. Accordingly, under respondent's concession, our resolution of the constructive dividend issue in Mr. Hayes' case renders the section 1041 issue in Ms. Hayes' case moot.

To reflect the foregoing,

> *Decision will be entered for petitioner in docket No. 26913–91.*

> *Decision will be entered for respondent in docket No. 30646–91.*