GLORIA T. BLATT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12456–92.        Filed January 31, 1994.

*Lawrence P. Schweitzer*, for petitioner.
*Tanya M. Marcum*, for respondent.

LARO, *Judge*: This case is before the Court pursuant to a petition filed by Gloria T. Blatt (petitioner) for a redetermination of respondent's determination of a deficiency of $96,787 in petitioner's 1987 Federal income tax.[1] The sole issue for decision is whether a payment made to petitioner in redemption of all her stock is taxable to her in 1987, the year of redemption, or is nontaxable to her under section 1041.[2] The redemption was made by a corporation owned equally by petitioner and her former husband, Frank J. Blatt (Blatt), and was made pursuant to a court decree entered incident to their divorce. We hold that the stock redemption payment is taxable to petitioner in 1987.

### FINDINGS OF FACT

Pursuant to Rule 122(a), the parties submitted this case to the Court without trial; the record in this case consists of the pleadings and the facts recited in a joint stipulation with accompanying exhibits. These facts and exhibits are incorporated herein by this reference. At the time she filed her petition, petitioner resided in East Lansing, Michigan.

Petitioner married Blatt on September 1, 1946. In 1977, petitioner and Blatt organized Phyllograph Corp. (corporation) in the State of Washington; petitioner and Blatt each owned 50 percent of corporation.[3] Petitioner filed a divorce complaint on October 4, 1985, and the divorce was finalized on July 21, 1987.

On July 16, 1987, corporation redeemed all petitioner's stock in exchange for $45,384. The redemption was incident to the divorce decree.[4] Petitioner did not report any of these proceeds on her 1987 Federal income tax return. Respondent determined that petitioner realized a long-term capital gain of $39,184 on the redemption, and that petitioner should have recognized this gain in 1987; respondent further deter-

---

[1] In *Blatt v. Commissioner*, T.C. Memo. 1993–550, we decided an unrelated issue in this case. The Court severed the issues for separate decision.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1987, the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Phyllograph Corp. (corporation) did not issue shares of stock. For the sake of convenience, however, we refer to petitioner's interest in corporation as stock.

[4] In relevant part, the divorce decree provided: "IT IS FURTHER ORDERED and ADJUDGED that the parties, being equal stockholders, shall cause Phyllograph Corp. to redeem plaintiff's stock in said Corporation within ten (10) days after entry of this judgment for the sum of Forty-five Thousand Three Hundred Eighty-four Dollars ($45,384)."

mined that the redemption did not involve a transfer between spouses or former spouses under section 1041.

## OPINION

Gross income includes gains derived from dealings in property, sec. 61(a)(3); gains derived from the redemption of stock are generally includable in the gross income of the redeemed taxpayer, see generally sec. 302 (rules governing redemptions of stock). Petitioner asserts that the proceeds she received from corporation's redemption of her stock are excludable from her gross income under section 1041.

Section 1041 provides a broad rule of nonrecognition for sales, gifts, and other transfers of property between spouses or former spouses incident to divorce.[5] In part, Congress enacted section 1041 to replace the holding in *United States v. Davis*, 370 U.S. 65 (1962), that a divorce-related transfer of property in exchange for the release of marital claims resulted in recognition of gain to the transferor. H. Rept. 98–432, at 1491–1492 (1984). Before the enactment of section 1041, as a result of *Davis*, the transferring former spouse was taxable on a divorce-related transfer of appreciated property to his or her former spouse, and the recipient received a basis in the transferred property equal to its fair market value on the date of transfer. *United States v. Davis, supra*. Thus, the Government was whipsawed if such a transferor did not report any gain on a transfer of appreciated property. Accordingly, in 1984, Congress enacted section 1041 to remedy this whipsaw.[6] H. Rept. 98–432, at 1491–1492 (1984).

Consistent with the legislative history, section 1041 only addresses transfers between spouses or former spouses; it

---

[5] Sec. 1041 provides in part:

SEC. 1041(a). GENERAL RULE.—No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)—

    (1) a spouse, or

    (2) a former spouse, but only if the transfer is incident to the divorce.

  (b) TRANSFER TREATED AS GIFT; TRANSFEREE HAS TRANSFEROR'S BASIS.—In the case of any transfer of property described in subsection (a)—

    (1) for purposes of this subtitle, the property shall be treated as acquired by the transferee by gift, and

    (2) the basis of the transferee in the property shall be the adjusted basis of the transferor.

[6] Congress also enacted sec. 1041 to minimize the intrusion of the tax laws into marital relationships. As noted in the House committee report: "The committee believes that, in general, it is inappropriate to tax transfers between spouses. This policy is already reflected in the Code rule that exempts marital gifts from the gift tax, and reflects the fact that a husband and wife are a single economic unit." H. Rept. 98–432, at 1491 (1984).

generally does not include transfers to third parties, [7] such as corporations. [8] The basic policy of section 1041 is to treat a husband and wife as one economic unit, and to defer, but not eliminate, the recognition of any gain or loss on interspousal property transfers until the property is conveyed to a third party outside the economic unit. To that end, no gain or loss is recognized upon the transfer of property from one spouse to another, and the property takes a transferred ("carryover") basis in the hands of the recipient spouse; the carryover basis preserves the gain (or loss) until the recipient spouse transfers the property to a third party in a taxable transaction.

The regulations prescribed under section 1041 apply the tax-free treatment under section 1041 to certain transfers to third parties on behalf of a spouse or former spouse incident to divorce. More specifically, section 1.1041–1T, Q&A 9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984) provides that

Q-9. May transfers of property to third parties on behalf of a spouse (or former spouse) qualify under section 1041?

A-9. Yes. There are three situations in which a transfer of property to a third party on behalf of a spouse (or former spouse) will qualify under section 1041, provided all other requirements of the section are satisfied. The first situation is where the transfer to the third party is required by a divorce or separation instrument. The second situation is where the transfer to the third party is pursuant to the written request of the other spouse (or former spouse). The third situation is where the transferor receives from the other spouse (or former spouse) a written consent or ratification of the transfer to the third party. * * * In the three situations described above, the transfer of property will be treated as made directly to the nontransferring spouse (or former spouse) and the nontransferring spouse will be treated as immediately transferring the property to the third party. The deemed transfer from the nontransferring spouse (or former spouse) to the third party is not a transaction that qualifies for nonrecognition of gain under section 1041.

Petitioner contends that Q&A 9 encompasses corporation's redemption of her stock, and, accordingly, the redemption qualifies under section 1041 as a transfer that is nontaxable

---

[7] We recognize that sec. 1041(a) refers to transfers in trust for the benefit of a spouse or a former spouse incident to divorce. Although such a trust may be a third party, that reference is not relevant here.

[8] For example, where the wholly owned corporation of one spouse sells property to the other spouse, the sale generally is not a transfer between spouses. Sec. 1.1041–1T, A2, *Example* (3), Temporary Income Tax Regs., 49 Fed. Reg. 34452–34453 (Aug. 31, 1984).

to her. We disagree; petitioner's transfer of her stock to corporation was outside the provisions of Q&A 9 because the transfer was not on behalf of Blatt. To illustrate the operation of Q&A 9, assume that H owes a debt to a bank, and W, as part of a divorce settlement, transfers her unencumbered appreciated stock to the bank in discharge of H's debt. This transfer falls within the first "situation" described in Q&A 9; that is, the transfer is required by a divorce instrument and is made by W on behalf of H. Thus, under Q&A 9, the stock is deemed transferred from W to H, in a nonrecognition transaction under section 1041, and, contemporaneously therewith, the stock is deemed retransferred from H to the bank. Under Q&A 9, H receives a carryover basis in the stock on the deemed transfer from W, and realizes (and must recognize) gain on the retransfer equal to the difference between the amount of the discharged debt and H's carryover basis. The effect of Q&A 9 is that the appreciation in the stock at the time of W's transfer is preserved, and the tax consequences relating to the appreciation are shifted from W to H, on behalf of whose benefit W made the transfer to the bank.

As contrasted with the example above, the record in the instant case is devoid of evidence disproving respondent's determination that petitioner's transfer of her stock to corporation was not on behalf of Blatt within the meaning of Q&A 9. The redemption, in form, was a transaction between petitioner and corporation; she transferred her stock to corporation in exchange for its appreciated value in cash.[9] The term "on behalf of" means "in the interest of" or "as a representative of", Webster's Ninth New Collegiate Dictionary (1990); the record does not indicate that petitioner was acting in the interest of Blatt or as a representative of Blatt at the time of the redemption. A transfer that satisfies an obligation or a liability of someone is a transfer on behalf of that person;[10] petitioner does not claim, and the record does not

---

[9] Petitioner owned 50 percent of the stock of corporation before the redemption, and merely exchanged this stock for its value in cash.

[10] For example, sec. 6020 allows the Commissioner to prepare a return "on behalf of" a taxpayer who has failed to fulfill his obligation to file. See, e.g., *Millsap v. Commissioner*, 91 T.C. 926, 941 (1988); see also *Schroeder v. Commissioner*, T.C. Memo. 1989–110. Similarly, a shareholder may receive a constructive dividend where the corporation pays an obligation on behalf of the shareholder. See, e.g., *Tennessee Sec., Inc. v. Commissioner*, 674 F.2d 570 (6th Cir. 1982), affg. T.C. Memo. 1978–434; *Enoch v. Commissioner*, 57 T.C. 781 (1972); see also Bittker &

indicate, that the redemption satisfied any obligation of Blatt. In this respect, we note that Blatt did not personally guarantee the obligation of corporation to redeem petitioner's stock.[11]

Petitioner relied mainly on *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992), for her proposition that the redemption was a transfer on behalf of Blatt. For the reasons stated herein, we do not agree with *Arnes* and respectfully refuse to follow it.[12] In *Arnes*, the taxpayer and her former husband owned jointly a corporation that operated a McDonald's franchise. Pursuant to the divorce decree, the corporation redeemed all the stock owned by the taxpayer for $450,000 of consideration, consisting of cash, relief of debt, and installment payments. The Court of Appeals stated that McDonald's Corp. required complete ownership of the franchise by the owner/operator, and had informed the taxpayer's former husband that there should be no joint ownership of the franchise after the divorce. *Id*. at 457. The Internal Revenue Service asserted that the $450,000 was taxable to the taxpayer.

In holding for the taxpayer, the Court of Appeals for the Ninth Circuit reasoned that, although the taxpayer transferred her stock directly to the franchisee corporation, the transfer was on behalf of her former husband within the meaning of Q&A 9. *Id*. at 458. In this regard, the court stated that the taxpayer's former husband (and not the corporation) was obligated to purchase the taxpayer's stock. In addition, the court stated that the taxpayer's former husband bene-

Eustice, Federal Income Taxation of Corporations and Shareholders, par. 7.05, at 7–34 (5th ed. 1987). Likewise, the landmark case of *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 729–731 (1929), is in accord with the principle that a transfer satisfying a taxpayer's obligation or liability is a transfer on behalf of that taxpayer. In *Old Colony Trust Co.*, an employer discharged his employee's legal obligation to pay income tax, and the payment was income to the employee.

[11] Although the divorce degree required both petitioner and Blatt to cause corporation to redeem petitioner's stock, Blatt was not the guarantor of corporation's obligation in the conventional meaning of the term "guarantor".

[12] We note that petitioner might have contended that she was acting as a representative of Frank J. Blatt (Blatt), or acting to satisfy an obligation of Blatt, at the time she transferred her stock to corporation. Petitioner did not do so; the record does not support these contentions, and petitioner did not argue them on brief or otherwise show that she was acting on behalf of Blatt. Petitioner relied mainly on *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992), which we respectfully refuse to follow. (We are not constrained by *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), to follow *Arnes* because the instant case is appealable to the Sixth Circuit.) Accordingly, we hold for respondent because petitioner failed to sustain her burden of proof. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

fited from the redemption because he guaranteed the corporation's payments to her and was liable for those payments under State law. *Id.* at 458–459. Furthermore, the court noted that the trial court found that the transfer benefited the taxpayer's former husband because the transfer limited the taxpayer's future community property claims against her former husband. *Id.* at 457, 459.

As mentioned above, we disagree with *Arnes*; any putative benefit to Blatt, such as relief from a possible claim under marital property distribution laws, does not mean that the transfer by petitioner of her shares to corporation was on behalf of Blatt. We note, however, that the facts in *Arnes* are easily distinguishable from the facts at hand. First, in *Arnes*, the Court of Appeals stated that McDonald's Corp. required complete ownership of a franchise by an owner/operator after the divorce; no such requirement is present here with respect to ownership of corporation. Second, in *Arnes*, the Court of Appeals stated, in dicta, that the taxpayer's former husband was obligated to become the sole owner of the franchise; such is not the case here. Third, in *Arnes*, the taxpayer's former husband guaranteed the corporation's obligation to the taxpayer; by contrast, Blatt did not guarantee corporation's payment to petitioner. Fourth, unlike Washington, Michigan is not a community property State.

We have considered petitioner's other arguments and find them to be without merit. For the foregoing reasons, we hold that the redemption was not a transfer between spouses or former spouses under section 1041. [13]

*Decision will be entered under Rule 155.*

Reviewed by the Court.

HAMBLEN, CHABOT, SHIELDS, JACOBS, GERBER, WRIGHT, WELLS, and COLVIN, *JJ.*, agree with this majority opinion.

---

[13] The result we reach today harmonizes with the nontaxable treatment accorded the nonredeeming spouse by the Court of Appeals for the Ninth Circuit in *Edler v. Commissioner*, 727 F.2d 857 (9th Cir. 1984), affg. T.C. Memo. 1982–67, a case that was decided before the Commissioner prescribed the instant regulations under sec. 1041. See also Rev. Rul. 69–608, 1969–2 C.B. 42 (corporation's redemption of its stock from a retiring shareholder results in a constructive dividend to the continuing shareholder only if the redemption is in satisfaction of the continuing shareholder's primary and unconditional obligation to purchase the retiring shareholder's stock).

HALPERN, *J.*, concurring: I agree with the result reached by the majority. I write separately, however, because of the majority's treatment of *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992). The majority "easily" distinguish the facts of this case from those of *Arnes*. Nevertheless, the majority "disagree" with *Arnes*, and "refuse to follow it". The majority, however, do not clearly tell us how or why they disagree with *Arnes*. I cannot believe that the majority are speculating on how, if confronted with the admittedly distinguishable facts of *Arnes*, we would decide. Therefore, the majority must be rejecting the reasoning of the Court of Appeals for the Ninth Circuit, in *Arnes*, as that reasoning would apply to the facts of this case. The District Court, in *Arnes*, determined that the redemption there was on behalf of the husband, because he received a benefit from it. The Court of Appeals for the Ninth Circuit (affirming the District Court) added that the redemption relieved the husband of an obligation, but did not explicitly reject the "any-benefit" test of the District Court. As a preliminary matter, the Court of Appeals found a common tax meaning for the term "on behalf of": "Generally, a transfer is considered to have been made 'on behalf of' someone if it satisfied an obligation or a liability of that person." *Id.* at 459. The Court of Appeals for the Ninth Circuit held, however, that "[the wife's] transfer to * * * [the corporation] did relieve * * * [the husband] of an obligation, *and therefore constituted a benefit to [him]*". *Id.* (emphasis added). Since we are persuaded that the Court of Appeals had distinguishable facts before it, we cannot say for sure what test the Court of Appeals would apply to facts such as ours, where there is no evidence that the redemption satisfied any obligation of the husband. Inasmuch as it is unlikely that this case will be appealed to the Court of Appeals for the Ninth Circuit, speculation is not required by *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Clearly, the "any-benefit" test of the *Arnes* District Court is one we think to be wrong. If we wish to persuade the Court of Appeals to which an appeal in this case likely would lie (the Sixth Circuit), or the bar in general, then we should

clearly state our reasons. Simply saying that we disagree with *Arnes* is inadequate.

BEGHE, *J.*, agrees with this concurring opinion.

---

BEGHE, *J.*, concurring: I agree with the majority result. I agree with Judge Chiechi that we need not express the view that the Ninth Circuit Court of Appeals incorrectly decided *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992).[1] The majority having expressed that view, I agree with Judge Halpern that we are obliged to tell why, and this the majority opinion does not do.[2]

Inasmuch as the majority have put the ball in play, and Judge Halpern having brought it to mid-court, I write separately to express my view of how section 1041 should be interpreted and confined in its application to redemptions of the stock of closely held corporations.

I believe there is an interpretation of section 1041 that will properly harmonize the treatment of the remaining spouse and the terminating spouse, both in consolidated cases and where their cases are decided separately. Under a proper interpretation of section 1041 and respondent's regulation, no redemption should be considered to be "on behalf of" the remaining spouse unless it discharges that spouse's primary and unconditional obligation to purchase the subject stock, as summarized and set forth in the examples in Rev. Rul. 69–608, 1969–1 C.B. 42, and the case law on which it relies. See, e.g., *Kobacker v. Commissioner*, 37 T.C. 882, 896 (1962); *Edenfield v. Commissioner*, 19 T.C. 13, 20–21 (1952); *S.K. Ames, Inc. v. Commissioner*, 46 B.T.A. 1020, 1023–1024 (1942); see also *Edler v. Commissioner*, 727 F.2d 857 (9th Cir. 1984), affg. T.C. Memo. 1982–67. If this condition is satisfied, there will be nonrecognition of gain to the terminating spouse under section 1041 and, under the authorities cited above, dividend treatment of the remaining spouse. See *Hayes v. Commissioner*, 101 T.C. 593, 597, 602 n.9, 605 n.11

---

[1] For a laudatory comment from the redeemed spouse's point of view, see Preston & Hart, "Spouse's Stock in a Divorce Can Be Redeemed Tax Free", 78 J. Taxn. 360 (1993).

[2] What the majority seem to say is that the Court of Appeals in *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992), in holding that the terminating spouse whose stock was redeemed was entitled to nonrecognition of gain under sec. 1041, overexpansively equated any "benefit" to the remaining shareholder spouse with the redemption being on his behalf for the purpose of Q&A 9 of sec. 1.1041–1T, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984).

(1993), and cases cited therein. If, as in the case at hand, this condition is not satisfied, the terminating spouse will recognize gain from a sale or exchange on the redemption, and the remaining spouse will have no gain or dividend income. *Edler v. Commissioner, supra.*

Irrespective of whether the marriage was dissolved in a "romantic waltz" or a "violent apache dance", *Estate of Glen v. Commissioner*, 45 T.C. 323, 353 (1966) (Tannenwald, J., dissenting),[3] respondent should exert every effort to cause the resulting tax cases to be consolidated. If respondent doesn't see to it that the former spouses' tax cases are consolidated,[4] or, as should have occurred in *Arnes v. United States, supra*, brought together on the appeals from this Court and a District Court, there is an unnecessary risk of whipsaw or double taxation. See generally Special Committee on Whipsaw, Section of Taxation, American Bar Association, "Final Report", 30 Tax Law. 127 (1976). Our recent opinion in *Hayes v. Commissioner, supra*, is the model for the presentation and disposition of such cases. See also *Gaughan v. Commissioner*, T.C. Memo. 1993–320.

HALPERN, *J.*, agrees with this concurring opinion.

———————

CHIECHI, *J.*, concurring: While I agree with the result reached by the majority, the instant case is distinguishable, as the majority concludes, from *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992). In the present case, petitioner failed to satisfy her burden of establishing that the redemption was made "on behalf of" Blatt as required by section 1.1041–1T, Q&A 9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984). Therefore, I do not believe that this is the appropriate case in which to express the Court's view as to whether *Arnes* was correctly decided.

COHEN, CLAPP, WHALEN, and BEGHE, *JJ.*, agree with this concurring opinion.

———————

[3] See Young, "Separation and Divorce and the Tax Laws: 'Waltzes' and 'Apache Dances'", 22 Tax Law. 551, 572–577 (1969).

[4] There is no indication in the record how Mr. Blatt's tax case was handled, or whether respondent ever even determined a deficiency against him with respect to the transaction at issue in this case.

PARR, *J.*, dissenting: I respectfully dissent. I believe *Arnes v. United States*, 981 F.2d 456 (9th Cir. 1992), was rightly decided and that its rationale applies here as well.

The majority's reasoning that "petitioner does not claim, and the record does not indicate, that the redemption satisfied any obligation of Blatt" because Blatt did not personally guarantee the obligation strikes me as hypertechnical at best or disingenuous at worst. The husband had an obligation to obey the court order or be in contempt, as strong a "guarantee" as one could ask.

Moreover, the court's order in this case was pursuant to a *divorce* decree which, prima facie, indicates an obligation to divide the property and to therefore relieve the husband of further marital distributions. In substance (as well as form, in my view) this transaction was a property settlement between the spouses. I would hold under the facts of this case that petitioner's transfer of stock, incident to a divorce decree, was indeed made "on behalf of" her husband, and is thus entitled to nonrecognition treatment under section 1041.

PARKER and SWIFT, *JJ.*, agree with this dissenting opinion.