[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 19 2000
THOMAS K. KAHN
CLERK

_____

No. 99-12803

_____

D. C. Docket No. 98-00001-CV-WCO-2

LINDA KAREN BROWNLOW CRAVEN,

Plaintiff-Appellee,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 19, 2000)**

Before ANDERSON, Chief Judge, BLACK, Circuit Judge, and HALL[*], Senior
Circuit Judge.

HALL, Senior Circuit Judge:

---

[*] Honorable Cynthia Holcomb Hall, Senior U. S. Circuit Judge for the Ninth Circuit, sitting by
designation.

The United States appeals an order granting summary judgment in favor of Linda Craven ("Linda"). Linda had sued the Internal Revenue Service ("IRS") seeking a refund of certain proceeds she had received from her divorce settlement which she claimed were not taxable to her. We have jurisdiction pursuant to 28 U.S.C. §1291 and we affirm.

I

The following facts are undisputed by both parties: Linda married Billy Joe Craven ("Billy Joe") in 1966. In 1971, the couple started their own pottery business, in which they both worked. In 1975, Billy Joe incorporated the business under the name of Craven Pottery, Inc. ("the corporation"). The corporation was formed with Billy Joe owning 51% of the stock, Linda owning 47% of the stock, and the remaining 2% being owned by their two children at 1% each respectively. Billy Joe became the corporation's president.

Linda stopped working at the corporation in 1987, because of the souring of the Cravens' marriage. In 1988 the Cravens separated, and in 1989, Linda sued Billy Joe and the corporation for a divorce seeking damages against both Billy Joe and the corporation for misappropriation of her salary. Her requested relief consisted in a demand that the corporation be sold and that the proceeds be

divided up amongst the shareholders.

In 1991, a divorce decree was entered into. This decree contained a settlement agreement between Billy Joe, Linda, and the corporation, and settled all matters between the parties. By terms of this agreement, Billy Joe and Linda agreed to divide their marital property. In relevant part, Linda agreed to sell to the corporation, and the corporation agreed to buy, her stock pursuant to a consent in lieu of special joint meetings of directors and shareholders of the corporation. The divorce was the sole reason for Linda's agreement to transfer the stock.

The corporation gave Linda a promissory note in the face amount of $4.8 million for her stock. Billy Joe guaranteed the note and expressly acknowledged that its terms were of "direct interest, benefit and advantage" to him. The note was payable in 120 equal monthly payments beginning in July 2000, together with the lump sum payments of $1 million each in June 2000, 2005, and 2010. The corporation had the option of electing to pay any amount due under the promissory note before its due date by paying its then present value, and such payments were to be applied in satisfaction of the lump sum payments first beginning with one due in 2010, next liquidating the payment due in 2005, then the one due in 2000, and lastly the monthly installments. In determining the present value of a payment, it was to be discounted from the due date to the date of payment by applying an

4

annual interest rate of 7½% as the discount rate.  The stock redemption agreement

between Linda and the corporation provided that the payments under the note were

without stated interest, and that the corporation would send taxpayer Forms 1099-

INT stating the amounts of interest imputed to her under 26 U.S.C. §1272

("§1272").

Four prepayments of the note were made, the first by Billy Joe in 1991 and

the remaining three prepayments by the corporation in 1992, 1993, and 1998.

Pursuant to the stock redemption agreement, the corporation filed Forms 1099-INT

for the years 1992, 1993, and 1994, reflecting interest income imputed to Linda on

the note.  Linda did not report the imputed interest income on the note, nor did she

report capital gains from the redemption of her stock in the corporation in her tax

returns for 1992, 1993, and 1994.  However, she filed disclosure statements taking

the position that the redemption qualified for nonrecognition under 26 U.S.C.

§1041 ("§1041") and that the interest reflected on Forms 1099-INT was not taxable

because she is a cash basis taxpayer, the interest was not paid, and any interest

imputed was nontaxable under §1041 as a transfer incident to divorce.

After an audit, the IRS determined that the redemption did not qualify for

nonrecognition treatment under §1041 and that, consequently, Linda had capital

gains based on the principal of the prepayments on the note.  The IRS further

5

determined that Linda had interest income under the note in the amounts set forth on Forms 1099-INT. Linda paid the resulting tax and interest due, filed a timely claim for refund, and after that claim was denied, sued for the refund in federal district court.

The district court held that Linda qualified for nonrecognition under §1041 because the redemption fell within the confines of Temp. Treas. Reg. §1.1041-1T(c) (Q&A 9) ("Q&A 9") which states that under certain circumstances a transfer of property to a third party on behalf of a spouse (or former spouse) will qualify under §1041. The district court reached this conclusion because the redemption came as a result of Billy Joe's obligation under Georgia law to equitably divide all marital assets. See Craven v. United States, 70 F. Supp. 2d 1323, 1329 (N.D.Ga. 1999). The district court noted that since Billy Joe had guaranteed the corporation's payment of the note, and since Billy Joe was, in effect, in complete control over the corporation, all arrangements made by Linda pursuant to the divorce settlement were to be considered "on behalf" of Billy Joe. See id. at 1329-30.

Notwithstanding the above, the district court also ruled that Linda was required to include in income imputed interest on the corporation's note under §1272 because Linda had raised only §1041 as a defense to inclusion of interest.

6

See id. at 1330-31. The district court noted that the redemption and the interest need not be treated the same for tax purposes and that interest need not be expressly stated to be taxable. See id. at 1331. In doing so, the district court rejected Linda's reliance on Treas. Reg. §1.1274-1(b)(iii), which provides that the original issue discount rules do not apply to transaction covered by §1041, noting that the government had correctly pointed out that the regulation only applied to debt instruments issued after April 4, 1994. See id. at 1332 n.6.

However, in a motion for reconsideration, Linda informed the district court that both sides had neglected to mention that a proposed regulation with terms identical to those eventually adopted in Treas. Reg. §1.1274-1(b)(iii) had been proposed in 1986 and that the Treasury Decision adopting the final regulations allowed taxpayers to treat the proposed regulations as substantial authority under 26 U.S.C. §6662 for debt instruments issued prior to December 22, 1992, and for lending transactions, sales, and exchanges that occurred prior to December 22, 1992. In light of this fact, even though the government noted that proposed regulations are not binding, it nonetheless decided not to oppose Linda's motion for reconsideration, reserving the right to argue that Linda would owe interest under 26 U.S.C. §1274 ("§1274") should §1041 be deemed to be inapplicable to

7

the stock redemption.  Therefore, the district court granted Linda's motion.  See id. at 1334.  The government now appeals the district court's rulings.

II

Because this case involves pure questions of law, the standard of review is de novo.  See In re Lewis, 137 F.3d 1280, 1282 (11th Cir. 1998).

A.     26 U.S.C. §1041

The central issue of this case is whether Linda can avoid recognition of gain on the redemption of her stock in Craven's Pottery, Inc. in accordance with a property settlement incident to a divorce.

The income tax consequences that would normally ensue from this transaction are clear when §1041 does not apply.  Where a redemption of stock completely terminates the shareholder's interest in the corporation, the Internal Revenue Code treats the redemption as a sale of stock.  See 26 U.S.C. §§302(a) &

(b)(3). The amount by which the payment of principal received by the shareholder from the sale of the stock exceeds the taxpayer's basis in the stock constitutes gain, which is ordinarily taxed as capital gain. See 26 U.S.C. §1001(a). The IRS accordingly determined that, in this case, taxpayer had capital gains based on the principal of the prepayments made to her on the notes of $187,922 in 1992 and $285,709 in 1993.

Section 1041 was enacted as a response to the Supreme Court case of United States v. Davis, 370 U.S. 65 (1962). In that case, a husband owned 1,000 shares of stock in the du Pont company, which he transferred to his wife as part of a divorce settlement. In return, she relinquished her marital rights in the stock, including a right of intestate succession; her interest in the stock was governed by the law of Delaware, which is not a community property state. The value of the stock at the time of transfer exceeded the husband's basis therein. The Supreme Court had "no doubt" that Congress intended that the appreciation or "economic growth" in the stock be taxed. See id. at 68. Rather, the question was whether the transfer from husband to wife was an appropriate occasion for triggering the tax:

> The problem confronting us is simply *when* is such accretion to be taxed. Should the economic gain be presently assessed against . . . [the husband], or should this assessment await a subsequent transfer of the property by the wife?

9

Id. (emphasis in the original). The husband argued that the conveyance should occasion no tax to him, invoking the principle that a division of jointly owned or community property is not a taxable event. But after examining Delaware law, the Supreme Court concluded that the wife's inchoate marital rights in the stock did not rise to the level of making her a co-owner. The Court held that the transfer was a taxable event, generating gain to the husband. In addition, the Court ruled that the wife acquired a stepped-up basis in the stock equal to such fair market value. See id. at 69.

Davis spawned considerable controversy and litigation, in part because the Court's opinion left open the possibility that the tax consequences of a divorce settlement might be different in a community property jurisdiction, or even in a common law jurisdiction that (unlike Delaware) treated spouses as co-owners of marital property. Congress entered the field in 1984, enacting §1041 to modify the rules of Davis. The House committee report observed "that, in general, it is inappropriate to tax transfers between spouses. This policy is already reflected in the Code rule that exempts marital gifts from the gift tax, and reflects the fact that a husband and wife are a single economic unit." H.R. Rep. No. 98-432, pt. 2, at 1491 (1984).

Section 1041 provides a broad rule of nonrecognition for sales, gifts, and other transfers of property between one spouse (or former spouse) and another. It provides in relevant part, that:

> No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of) –
>
> (1)   a spouse, or
>
> (2)   a former spouse, but only if the transfer is incident to the divorce.

26 U.S.C. §1041. Thus, the provision is not limited to transfers in divorce, but also applies to conveyances between spouses who are not contemplating divorce. Under §1041(b), property received in a transfer subject to §1041 is excluded from the recipient's gross income as if it were a gift, even if the transfer is a cash sale or is made without donative intent as part of a contested divorce. The recipient takes a "carryover" basis for the property equal to the transferor's basis, even if it exceeds the value of the property at the time of the transfer.

Shortly after the enactment of §1041, the Treasury department published a temporary regulation, which is still in effect, to provide guidance to taxpayers. The Ninth Question of 26 C.F.R. §1.1041-1T, which is relevant to the present appeal, states in pertinent part:

Q-9   May transfers of property to third parties on behalf of a spouse (or former spouse) qualify under §1041?

11

A-9    Yes.  There are three situations in which a transfer of property to a third party on behalf of a spouse (or former spouse) will qualify under §1041. . . .  The first situation is where the transfer to the third party is required by a divorce or separation instrument.  The second situation is where the transfer to the third party is pursuant to the written request of the other spouse (or former spouse).  The third situation is where the transferor receives from the other spouse (or former spouse) a written consent or ratification of the transfer to the third party. . . .  In the three situations described above, the transfer of property will be treated as made directly to the nontransferring spouse (or former spouse) and the nontransferring spouse will be treated as immediately transferring the property to the third party.  The deemed transfer from the nontransferring spouse (or former spouse) to the third party is not a transaction that qualifies for nonrecognition of gain under §1041.

An example of such an occurrence is where the husband owes a debt to a bank, and the wife, as part of the divorce settlement, transfers appreciated stock of her own directly to the bank in discharge of husband's debt.  Such a transfer would fall within the first "situation" described in the regulation, *i.e.*, the transfer would be one "required by a divorce or separation instrument" and would be treated as made by the wife "on behalf of" the husband.  Therefore, the stock would be deemed to go first from wife to husband in a nonrecognition transaction covered by §1041, with husband acquiring a carryover basis in the stock, and then from husband to the bank, which would trigger gain to husband measured by the excess of the discharged debt over the carryover basis.  The effect of this would be to preserve the element of gain, but to shift the incidence of the tax from wife to husband, "on behalf of" whom wife made the transfer to the "third party" bank.

12

Linda contends that her transfer of stock qualified for nonrecognition treatment under §1041 as interpreted in Temp. Reg. §1.1041-1T(c). She argues that the transfer of the stock to the corporation was done pursuant to her divorce agreement and therefore was on behalf of her former spouse within the language and purposes of the temporary regulations. The IRS disputes that the transfer was "on behalf of" Billy Joe so as to come within the regulation and shield Linda from recognizing gain.

It is undisputed that the transfer occurred incidental to the Cravens' divorce. Therefore, the central question is whether the transfer was made by Linda "on behalf" of Billy Joe. Linda offered the district court three main reasons, which the district court agreed with, for why §1041 would apply to her redemption of the stock: (1) because Georgia law obligates the equal distribution of marital assets pursuant to a divorce agreement, Linda was obligated to redeem her stock to the corporation; (2) Billy Joe was the guarantor of the corporation's payments that were due on the note, and because Georgia law makes guarantors jointly and severally liable for any debts incurred on the note, her redemption of the stock was "on behalf" of Billy Joe; and (3) because the corporation is a closely held one where, after the redemption, Billy Joe owned 98% of the stock, Linda's transfer was, in effect, to her husband.

13

In agreeing with Linda's arguments, the district court relied primarily on Arnes v. United States, 981 F.2d 456 (9th Cir. 1992) ("Arnes I"). In Arnes I, the divorcing spouses, who each owned 50% of a corporation that ran a McDonald's franchise, were required to transfer the entire ownership to one of the spouses according to McDonald's policy. As a result, the divorce decree had one spouse sell her 50% stock interest to the corporation for a dollar amount which the other spouse guaranteed. See id. at 457. The Ninth Circuit ruled that this transaction came within the confines of §1041 because the redemption relieved the husband of an obligation to purchase his wife's stock and thereby conferred a benefit upon him. See id. at 459. The district court in this case ruled the facts and analysis of Arnes I were squarely on point.

The Arnes I decision has been called into question as being factually and analytically flawed. See Blatt v. Commissioner, 102 T.C. 77 (1994) (reviewed by the court). Blatt explained the faulty reasoning of Arnes I by pointing out that the Ninth Circuit never identified where the obligation of the husband to buy the stock came from. See id. at 82-83. Indeed, as the Tax Court held in a subsequent case, Arnes v. Commissioner, 102 T.C. 522, 528-29 (1994) ("Arnes II"), it was the corporation which was under the obligation to buy the wife's stock, and not the husband. Thus, the redemption was "on behalf" of the corporation, and not the

14

husband, and §1041 should not have been implicated as a result.  See Blatt, 102 T.C. at 81-83.

Fortunately, a recent Tax Court decision that came down after the district court reached its decision in this case, and after both parties had already completed their briefing before this Court, resolved the tension between Blatt, Arnes I, Arnes II, and the facts of this case.  See Read v. Commissioner, [Current] Tax. Ct. Rep. (CCH) No. 53,736, at 3911 (Feb. 4, 2000) (reviewed by the court).  The parties were aware of Read before oral argument because both submitted Federal Rules of Appellate Procedure 28(j) notices regarding this new case, and the matter was debated extensively at oral argument.

In Read, the Tax Court was confronted with facts that are basically identical to the ones at issue in this case.  In that case, a husband ("H") and a wife ("W") owned all the voting, and virtually all of the non-voting stock of a corporation ("C").  See Read at 3912-13.  When H and W divorced, pursuant to the divorce order, H elected to buy out W's shares in C by having C purchase W's stock, and by having C issue a promissory note to W bearing 9% interest for the balance of the purchase price.  See id. at 3913-15.  H then unconditionally guaranteed the payments by C to W in his individual capacity.  See id. at 3916.

15

As in this case, the issue in <u>Read</u> was whether §1041, as interpreted in Q&A 9, operated to deny recognition of the gain resulting to W on the transfer of her stock to C. The Tax Court held that under §1041, the gain was not to be recognized for tax purposes. <u>See</u> <u>id.</u> at 3924. In interpreting the meaning of the term "on behalf" from Q&A 9, the Tax Court rejected the notion that under Q&A 9, §1041 only applies if H had a "primary-and-unconditional-obligation" to purchase W's stock, stating that the "primary-and-unconditional-obligation" standard was "not an appropriate standard to apply in any case involving a corporate redemption in a divorce setting in order to determine whether the transfer of property by the transferring spouse to a third party is on behalf of the nontransferring spouse within the meaning of Q&A 9." <u>Id.</u> at 3921. The Tax Court noted that the "primary-and-unconditional-obligation" standard applies when the corporation pays H's debt for H and such payment is deemed a dividend to H. <u>See</u> <u>id.</u> at 3918. Rather, the Tax Court gave the term "on behalf" a plain meaning such as "in the interest of" or "as a representative of," and ruled that because W was acting under H's election as mandated by their divorce decree, W was acting "on behalf" of H and therefore fell within the rubric of §1041 and Q&A 9. <u>See</u> <u>id.</u> at 3923-24.

16

Given the detailed and comprehensive analysis undertaken by the Read court, and the factual similarities between Read and this case, we find the Read result persuasive. As illustrated above, the meaning of the phrase "on behalf" reflects the notion that a transfer from A to C is treated for tax purposes as a transfer from A to B to C, when A is in fact transferring on behalf of B to C. See e.g. Blatt, 102 T.C. at 81; Read, [Current] Tax. Ct. Rep. at 3923. The facts of this case show that the transfer from Linda to the corporation squarely comports with this understood definition of "on behalf."

The three facts that place Linda within the framework outlined by the Read court are: (1) she was redeeming her stock pursuant to the divorce settlement; (2) Billy Joe guaranteed the note; and (3) in that note Billy Joe acknowledged that its terms were of "direct interest, benefit and advantage" to him. The first fact enumerated above would be enough on its own to qualify Linda's transfer to the corporation for nonrecognition under §1041. The other two facts simply add strength to this conclusion. When the Cravens settled their divorce, they agreed to this redemption, and subscribed to a document that obligated Linda to transfer her stock to the corporation. In so doing, Linda was acting "on behalf" of Billy Joe because the divorce settlement reflected Billy Joe's wishes on the matter. Therefore, the Cravens' divorce settlement is akin to H's election in Read, which

the Read court found decisive in its ruling that W was acting on H's behalf in transferring her stock to C. See Read at 3923-24. This implication is confirmed by Billy Joe's explicit action of guaranteeing the note in his individual capacity, something H did as well in Read, and expressing in the guarantee that such an action was in his "interest." "Interest" is exactly what precedent instructs us is the plain meaning of "on behalf" and we need not look any further to determine that Billy Joe's interest, as admitted by him and as evidenced by his agreeing to the divorce settlement, was being served by Linda's transfer of her stock to the corporation.

We hold that the proceeds of Linda's transfer to the corporation fit within the terms outlined by §1041 and Q&A 9, and therefore qualify for nonrecognition. This holding follows the rationale behind the adoption of §1041 because it "facilitates the division of a marital estate incident to divorce without taxation to the spouse who is withdrawing assets from the marital estate." See Read at 3926 (Colvin, J., concurring). As such, Congress' stated purpose of broadly applying §1041 to transactions between divorcing spouses incident to their divorce is properly served.

B. 26 U.S.C. §1274

The second issue in this case is whether the imputed interest on the corporation's note that Linda acquired as a result of the stock redemption is subject to tax under §1274. As noted in part I above, the district court, upon reconsideration, ruled that such imputed interest is not taxable when §1041 applies to the transfer in question. Before the district court, and in its brief before this Court, the government conceded that Linda's imputed interest on the corporation's note is not taxable if the redemption is not taxable under §1041. Therefore, in light of our holding in part 2.A, we hold that §1274 does not operate to tax the imputed interest on the corporation's note in connection to a transfer when such transfer is deemed to trigger the nonrecognition provisions of §1041.

AFFIRMED.