T.C. Summary Opinion 2017-87

UNITED STATES TAX COURT

DAVID W. STAPLETON AND MELINDA STAPLETON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4860-16S.                    Filed December 4, 2017.

<u>Sarah K. Ritchey</u> and <u>Jonathan S. Bender</u>, for petitioners.

<u>Gretchen W. Altenburger</u> and <u>Nancy C. Carver</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies of $4,483 and $4,453 in petitioners' Federal income tax for 2013 and 2014 (years in issue), respectively. The deficiencies are attributable to respondent's disallowance of deductions for capital losses that petitioners carried forward from the taxable year 2012. Petitioners, husband and wife, resided in Colorado at the time the petition for redetermination was filed with the Court.

After concessions,[2] the sole issue remaining for decision is whether section 1041(a) bars David W. Stapleton (petitioner) from recognizing a capital loss that he realized on a sale of property to his former spouse, Maureen Stapleton, in 2012.

---

[1](...continued)
Revenue Code (Code), as amended and in effect for the taxable year 2012, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Petitioners did not challenge in their petition and thus have conceded all other adjustments set forth in the notice of deficiency.

## Background[3]

Petitioner and Maureen Stapleton are longtime residents of Aspen, Colorado. They married in 1991 and separated and divorced in 2007.

Petitioner works as a fundraiser for a nonprofit organization that provides ski lessons to children living in Aspen Valley. Maureen Stapleton is an established real estate agent and broker.

## I. Marital Separation Agreement

Maureen Stapleton initiated divorce proceedings against petitioner in August 2007. In November 2007 the couple executed a marital separation agreement and parenting plan (MSA) which provided for the division of the couple's marital assets, including several properties. The property at issue in this case, the so-called Horse Ranch Property (ranch property), apparently had previously served as the marital home.

In 2007 the ranch property was encumbered by a mortgage of $1,826,000 and a line of credit of $243,000. Petitioner and Maureen Stapleton were obligors on both the mortgage and the line of credit.

After identifying the couple's jointly owned properties, the MSA stated in relevant part:

---

[3]Some of the facts have been stipulated and are so found.

Upon execution hereof, Wife shall execute a special warranty deed conveying all of her right title and interest to the Horse Ranch Property to Husband. Husband agrees to sell the Horse Ranch Property with most of the personal property. The Horse Ranch Property shall be listed by BJ Adams & Company and Husband shall not be responsible for any listing commissions to BJ Adams & Company. Husband agrees to accept any offer of 93% of the list price. Prior to closing, Wife shall be responsible for all insurance, property taxes, etc. for the Horse Ranch Property. Husband shall be responsible for other expenses (i.e. utilities, maintenance, etc.) for the Horse Ranch Property. Wife also shall pay mortgage on the Horse Ranch Property until the Horse Ranch Property is sold. Wife shall be entitled to rent the Horse Ranch Property starting no later than December 1, 2007 and Wife shall be entitled to receive all rental proceeds. Wife shall be entitled to claim the mortgage interest that she is obligated to pay hereunder in accordance with the applicable tax laws and regulations. Upon closing and thereafter, Husband shall be responsible for all taxes (capital gain or otherwise), commissions, closing costs and other expenses typically paid by the seller in a real estate transaction.

Husband shall maintain the Horse Ranch Property in a high quality manner and shall fully cooperate in any showings. Wife agrees to use her best efforts in good faith to facilitate the sale of the Horse Ranch Property.

If the Horse Ranch Property is not under contract by March 30, 2008, Husband agrees to lower the listing price to $4,025,000.00 and to accept 93% of the list price. Thereafter, Husband agrees to lower the listing price at least 5% every six (6) months and to accept 93% of the list price until the Horse Ranch Property is sold.

Upon execution hereof, Husband shall execute a special warranty deed conveying all of his right title and interest to the Terrace Lane Property, the Columbine Court Property and the Little Elk Creek Property to Wife. Wife agrees to be solely responsible for the expenses relating to these three Properties such as the mortgages,

taxes, insurance, maintenance, etc. Wife's attorney shall prepare the appropriate special warranty deeds.

## II. Efforts To Sell the Ranch Property

Consistent with the MSA, petitioner and Maureen Stapleton listed the ranch property for sale with BJ Adams & Co. The initial listing price of the ranch property was $4,200,000. When the ranch property did not sell, the listing price was gradually lowered in March 2008, October 2008, and March 2009.

In September 2009 Maureen Stapleton began working as a real estate agent and broker with Morris & Frywald Sotheby's International Realty (M&F). At that time petitioner executed an agreement authorizing M&F to list the ranch property at a price of $3,473,000. When the ranch property did not sell, the listing price was gradually reduced in April 2010, July 2010, and March 2011.

In April 2011 petitioner received an offer of $2.4 million for the ranch property. Although petitioner negotiated a sale price of $2.6 million with the potential buyer, the contract promptly fell through.

Petitioner did not receive any additional offers for the ranch property in 2011. The listing price of the ranch property was reduced again in June 2012.

III. <u>Sale of the Ranch Property to Maureen Stapleton</u>

In November 2012 petitioner asked Maureen Stapleton whether she would be interested in purchasing the ranch property, and he offered to sell it to her for $225,000 and the assumption of all debt encumbering the property. She made a counteroffer to pay petitioner $175,000 for the ranch property (in three installments) and to assume the outstanding debt. In November 2012 the principal amounts due on the mortgage and the line of credit encumbering the ranch property totaled $1,986,741.

On December 3, 2012, Maureen Stapleton sent an email to petitioner stating in relevant part:

> This is to confirm I will pay David W. Stapleton $175,000 as a final property settlement in the dissolution of Case No. 07 DR 320. David in turn will sign over the deed for * * * [the property] to Maureen Stapleton. The following is the payment schedule:
>
> December 03, 2012 $50,000
> January 15, 2013 $50,000
> January 15, 2014 $75,000.

The next day petitioner executed a special warranty deed transferring title to the ranch property to Maureen Stapleton. The deed stated that petitioner was transferring the ranch property to her "as a part of the distribution of marital property in the dissolution of Case No. 07 DR 320".

After Maureen Stapleton purchased the ranch property, petitioner was relieved of liability on the mortgage and the line of credit encumbering the property. Maureen Stapleton made the required installment payments to petitioner to complete the transaction. She continued to reside at the ranch property when this case was tried.

## IV. Tax Returns and Deficiency Notice

Petitioners filed joint Forms 1040, U.S. Individual Income Tax Return, for the taxable years 2013 and 2014. On their 2013 tax return petitioners claimed a capital loss carryforward of $598,341 (arising from the sale of the ranch property) and applied it to offset $23,918 of reported capital gain. On their 2014 tax return, petitioners claimed a capital loss carryforward of $574,423 and applied it to offset $17,821 of reported capital gain.[4]

Respondent issued a notice of deficiency to petitioners disallowing the deductions for the capital loss carryforwards claimed on their tax returns for 2013 and 2014 on the ground that the initial capital loss arose from a transfer of property incident to divorce that is subject to nonrecognition under section 1041.

---

[4]The parties now agree that petitioner overstated his capital loss and, in the event petitioners prevail on the merits, the correct amounts of capital loss carryforwards would be $359,623 and $335,705 for the taxable years 2013 and 2014, respectively.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under certain circumstances, the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Although petitioners do not assert that section 7491(a) applies, the facts that are relevant to the disposition of this case are not in dispute. Consequently, the placement of the burden of proof is immaterial.

Section 1041(a)(2) provides the general rule that "no gain or loss shall be recognized on a transfer of property from an individual to * * * a former spouse, but only if the transfer is incident to divorce." Section 1041(c) provides that, for purposes of subsection (a)(2), a transfer is incident to divorce if it occurs within one year after the date on which the marriage ceases or such transfer is related to the cessation of the marriage.

Although the Code does not define the phrase "related to the cessation of the marriage", section 1.1041-1T(b), Q&A-7, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984), states:

A transfer of property is treated as related to the cessation of the marriage if the transfer is pursuant to a divorce or separation instrument, as defined in section 71(b)(2), and the transfer occurs not more than 6 years after the date on which the marriage ceases. A divorce or separation instrument includes a modification or amendment to such decree or instrument. Any transfer not pursuant to a divorce or separation instrument and any transfer occurring more than 6 years after the cessation of the marriage is presumed to be not related to the cessation of the marriage. This presumption may be rebutted only by showing that the transfer was made to effect the division of property owned by the former spouses at the time of the cessation of the marriage. For example, the presumption may be rebutted by showing that (a) the transfer was not made within the one- and six-year periods described above because of factors which hampered an earlier transfer of the property, such as legal or business impediments to transfer or disputes concerning the value of the property owned at the time of the cessation of the marriage, and (b) the transfer is effected promptly after the impediment to transfer is removed.

A divorce or separation instrument, as defined in section 71(b)(2), includes a written separation agreement.

Respondent maintains that section 1041(a)(2) bars recognition of the loss that petitioner realized on the sale of the ranch property to Maureen Stapleton because the transfer was related to the cessation of the couple's marriage within

the meaning of section 1041(c)(2) and section 1.1041-1T(b), Q&A-7, Temporary Income Tax Regs., supra.

Petitioners aver that the sale of the ranch property to Maureen Stapleton was not related to the cessation of the couple's marriage because the transfer was not carried out pursuant to a divorce or separation instrument and the transfer was not made to effect the division of property that the couple owned at the time of the cessation of their marriage. Petitioner maintains in relevant part that a transfer between former spouses is related to the cessation of the marriage within the meaning of the statute (and the related temporary regulation) only if the transfer is made as consideration for an outstanding marital obligation.

Section 1041 was enacted as part of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, sec. 421, 98 Stat. at 793-795. Legislative history states that Congress enacted the provision in an effort to eliminate or reduce extensive litigation and uncertainty surrounding the tax treatment of divisions of property between spouses incident to divorce. See H.R. Rept. No. 98-432 (Part 2), at 1491-1492 (1984), 1984 U.S.C.C.A.N. 697, 1134-1135. In particular, section 1041 was intended in part to replace the Supreme Court's holding in United States v. Davis, 370 U.S. 65 (1962), that a divorce-related transfer of property between former spouses in exchange for the release of marital claims resulted in recognition of

gain to the transferor/spouse. H.R. Rept. No. 98-432, supra at 1491-1492, 1984 U.S.C.C.A.N. at 1134. The Committee on Ways and Means (committee) noted that the Government could be whipsawed if a transferor did not report any gain on a transfer of appreciated property and observed that several States had amended their property law with the aim of avoiding the result in Davis. H.R. Rept. No. 98-432, supra at 1491-1492, 1984 U.S.C.C.A.N. at 1134. The committee further noted that the Code provided for different tax treatment of losses realized on transfers of property between spouses and similar transfers between former spouses. Id. at 1491, 1984 U.S.C.C.A.N. at 1134.

Congress enacted section 1041 to defer the recognition of any gain or loss on interspousal transfers of property. The committee explained the new provision in relevant part as follows:

> The bill provides that the transfer of property to a spouse incident to a divorce will be treated, for income tax purposes, in the same manner as a gift. Gain * * * or loss will not be recognized to the transferor, and the transferee will receive the property at the transferor's basis (whether the property has appreciated or depreciated in value). A transfer will be treated as incident to a divorce if the transfer occurs within one year after the parties cease to be married or is related to the divorce. This nonrecognition rule applies whether the transfer is for the relinquishment of marital rights, for cash or other property, for the assumption of liabilities in excess of basis, or for other consideration and is intended to apply to any indebtedness which is discharged. Thus, uniform Federal income tax consequences will apply to these transfers notwithstanding that the

property may be subject to differing state property laws. [Id. at 1492, 1984 U.S.C.C.A.N. at 1135; emphasis added; fn. ref. omitted.]

In defining the phrase "incident to divorce" which appears in section 1041(a)(2), Congress adopted the blanket phrase "related to the cessation of the marriage" in section 1041(c)(2). In the absence of a statutory definition of the latter phrase, and consistent with the legislative history quoted above, courts have concluded that the phrase should be broadly construed. See Young v. Commissioner, 240 F.3d 369, 375-376 (4th Cir. 2001), aff'g 113 T.C. 152 (1999); Blatt v. Commissioner, 102 T.C. 77, 79 (1994).

In Young, a couple divorced in 1988 and the following year entered into a property settlement agreement under which they divided their marital property and the wife received a promissory note from her former husband. In 1992, after the husband had defaulted on the note, the wife obtained a judgment against him. Thereafter, the couple entered into a second settlement agreement under which the husband transferred a tract of land to his former wife in exchange for the promissory note and cancellation of the judgment. After the transfer was completed, the wife sold the property.

On review, the Court sustained the Commissioner's determination that the husband's transfer of the land to his former spouse was subject to nonrecognition

under section 1041. The Court noted initially that the parties agreed that the 1989 property settlement agreement was "incident to" the divorce decree because its purpose was to divide the marital property. Young v. Commissioner, 113 T.C. at 156. The Court further found that the 1992 settlement agreement resolved a dispute arising under the 1989 property settlement agreement and completed the division of marital property. Id. Consequently, the Court held that the 1992 settlement agreement was "incident to" the divorce decree, and, as a result, the husband's property transfer to his former spouse was "related to the cessation of the marriage" within the meaning of the temporary regulation (quoted above). Id. The Court concluded in the alternative that, even if the temporary regulation was not applicable, the transfer completed the division of marital property and, therefore, was related to the cessation of the marriage within the meaning of section 1041(c). Id.

Similar circumstances arose in Belot v. Commissioner, T.C. Memo. 2016-113, a case in which a couple had agreed in the course of divorce proceedings to make the necessary transfers to equalize their interests in several businesses, including a dance studio. Joint ownership of the dance studio quickly led to discord, and the wife filed suit to compel her former husband to sell his entire interest in the business to her. The couple then entered into a settlement

agreement under which the wife purchased from her former spouse all of his interests in their various business enterprises.

The Commissioner determined that Mr. Belot realized and was required to recognize gain on the transfer of his interests in the couple's business enterprises to his former spouse. On review, the Court determined that the transfers in question qualified for nonrecognition treatment under section 1041. Specifically, the Court concluded that Mr. Belot had shown that the settlement agreement was made to effect the division of property owned by the former spouses at the time of the cessation of the marriage. Id. at *10-*11. In rejecting the Commissioner's position, the Court held that Mr. Belot was not required to show that the transfers in dispute were attributable to legal or business impediments that prevented a transfer called for by the divorce decree, that section 1041 is not limited in its application to a single or the first division of marital property, and that the provision is equally applicable to divisions of marital property accomplished through sales. Id.

The instant case is similar in material respects to the factual scenarios presented in Young and Belot. The MSA provided for the division of petitioner and Maureen Stapleton's marital property and included relatively complex terms governing the final disposition of the ranch property. While Maureen Stapleton

was compelled to transfer legal title to the ranch property to petitioner, she remained responsible for payment of the insurance, mortgage, and property taxes; and she retained the right to lease the property and to collect any rents thereon. Although petitioner held legal title to the ranch property, he was obliged to sell it (within specific parameters) and to pay the normal expenses related to the maintenance of the property in the meantime. In sum, without delving into the nuances of servitudes, covenants, and beneficial interests in real property, the record shows that petitioner and Maureen Stapleton held specific interests in and were subject to particular obligations in respect of the ranch property throughout the five-year period that it was listed for sale.

The record shows that petitioner and Maureen Stapleton respected the terms of the MSA and made a good-faith effort to sell the ranch property. It appears, however, that a timely sale of the ranch property was hindered by a challenging real estate market. Against this backdrop, petitioner agreed to sell the ranch property to Maureen Stapleton.

The parties debate the significance of Maureen Stapleton's December 3, 2012, email to petitioner which referred to the sale as a "final property settlement in the dissolution of Case No. 07 DR 320", and terms of the special warranty deed which referred to the transfer as a "distribution of marital property in the

dissolution of Case No. 07 DR 320". Petitioners maintain that neither petitioner nor Maureen Stapleton understood the legal import of the quoted phrases. In any event, the Court does not consider the quoted phrases to be dispositive of the question presented in this case.

What is clear on this record is that the division of the couple's marital property, as prescribed by the MSA, was not complete until the ranch property was sold. As discussed above, both petitioner and Maureen Stapleton had retained significant rights and obligations in respect of the ranch property after their marriage was dissolved. We therefore conclude that petitioner's sale of the property to Maureen Stapleton was made to effect the division of property that the couple owned at the time of the cessation of their marriage within the meaning of section 1.1041-1T(b), Q&A-7, Temporary Income Tax Regs., supra. Moreover, the sale was "related to the cessation of the marriage" when we construe section 1041(c) broadly in accordance with the legislative history of the provision and this Court's caselaw.

We reject petitioner's argument that a transfer of property between former spouses relates to the cessation of the marriage only if the transfer is made as consideration for an outstanding marital obligation. Neither section 1041(c), the temporary regulation, nor the legislative history imposes such a restriction on the

application of the statute. Consistent with the preceding discussion, respondent's determinations disallowing the capital loss deductions that petitioners claimed for the years in issue is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.